**Norfolk**

BRIAN SCOTT PIERSON

v.

COMMONWEALTH OF VIRGINIA

No. 1166-91-1

Decided April 6, 1993

COUNSEL

John O. Venner (David A. Miller, Jr., P.C., on brief), for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BRAY, J.**—Brian Scott Pierson (defendant) was convicted of possession of cocaine and sentenced to three years imprisonment. Defendant contends on appeal that the court erred in overruling his motion to suppress evidence seized from his automobile. We disagree and affirm the decision of the trial court.

Upon appeal from a trial court's denial of a motion to suppress, we must view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. *Commonwealth v. Grimstead*, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991); *Reynolds v. Commonwealth*, 9 Va. App. 430, 436, 388 S.E.2d 659, 663 (1990). The findings of the trial court will not be disturbed unless "plainly wrong," *Grimstead*, 12 Va. App. at 1067, 407 S.E.2d at 48, and the burden is upon the appellant to show that the denial constituted reversible error. *Reynolds*, 9 Va. App. at 436, 388 S.E.2d at 663.

The record discloses that, at approximately 1:00 a.m. on July 15, 1989, Officers Joseph Pennypacker (Pennypacker) and John Tosloskie (Tosloskie) observed defendant, accompanied by a passenger, operating his automobile on Atlantic Avenue in the City of Virginia Beach. Pennypacker noticed that defendant "had a can of beer in his hand" and asked him to "pull over" to permit the issuance of a summons for the "open container violation." Before defendant exited his vehicle, Tosloskie observed him "hand . . . something" to his passenger, Stacey Wolcott (Wolcott), who first "hid[] it by her left leg," and then "brought it up along her body and right under her left armpit," "cross[ing] her arms."

Although Tosloskie "had no idea what the object was," he became "suspicious of it by [Wolcott's] actions" and inquired, "What do you have there?" Wolcott replied that she did not "have anything," but "at that time a velour bag fell out from under her arm." Tosloskie, "concerned" that the bag contained "a weapon of some sort," opened the passenger door of the vehicle and "picked up" the black, opaque bag, then located "right on the edge of the doorway where the door closes." The "drawstrings" at the "top of the bag" were open and, "the very second that [he] picked it up," Tosloskie "could see that it contained Baggies . . . [of] white powder," then "immediately" suspected and later proven to be cocaine.[1]

■ In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court approved "a protective search for weapons in the absence of probable cause to arrest . . . when [a police officer] possesses an articulable suspicion that an individual is armed and dangerous." *Michigan v. Long*, 463 U.S. 1032, 1034 (1983); *Lansdown v. Commonwealth*, 226 Va. 204, 211-12, 308 S.E.2d 106, 111 (1983), *cert. denied*, 465 U.S. 1104 (1984). Recognizing the " 'inordinate risk confronting an officer as he approaches a person seated in an automobile,' " *Long*, 463 U.S. at 1048 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)), the Court has extended such protective searches "beyond the person," including "areas" of the "passenger compartment of an automobile in which a weapon may be placed or hidden." *Id.* at 1049-50; *Glover v. Commonwealth*, 3 Va. App. 152, 156, 348 S.E.2d 434, 437-38 (1986), *aff'd*, 236 Va. 1, 372 S.E.2d 134 (1988); *see also Hatcher v. Commonwealth*, 14 Va. App. 487, 490-91, 419 S.E.2d 256, 258-59 (1992). If the officer "should . . . discover contraband other than weapons" during this investigation, "he . . . cannot be required to ignore [it], and the Fourth Amendment does not require its suppression in such circumstances." *Long*, 463 U.S. at 1050.

■ When reviewing such "protective conduct" by an officer, the " '[t]ouchstone of our analysis . . . is always the reasonableness in all circumstances of the particular governmental intrusion of a citizen's personal security.' " *Id.* at 1051 (quoting *Mimms*, 434 U.S. at 108-09); *see also Hatcher*, 14 Va. App. at 490, 419 S.E.2d at 259. There is " 'no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search

---

[1] Tosloskie was trained in narcotics identification and also had "extensive experience . . . on the street" with drug related evidence and offenses.

[or seizure] entails.' '' *Taylor v. Commonwealth*, 10 Va. App. 260, 264, 391 S.E.2d 592, 594 (1990) (quoting *Terry*, 392 U.S. at 21). '' '[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.' '' *Long*, 463 U.S. at 1050 (quoting *Terry*, 392 U.S. at 27).

Here, during a lawful stop of defendant's vehicle, Officer Tosloskie observed suspicious and furtive conduct under circumstances that prompted understandable concern for his security, and he acted reasonably and appropriately to minimize the threat. The investigative activity, which revealed the cocaine, was ''not a 'serious intrusion upon the sanctity' '' of anyone's person, but caused ''at most a mere inconvenience,'' in furtherance of a ''legitimate and weighty'' safety interest. *Mimms*, 434 U.S. at 110-11 (quoting *Terry*, 392 U.S. at 17). When measured against the potential of harm both to Tosloskie and the other officer, any disturbance of defendant's ''privacy rights'' was ''*de minimis*'' and clearly reasonable and permissible under the circumstances. *Hatcher*, 14 Va. App. at 490-91, 419 S.E.2d at 258-59.

We, therefore, find that the cocaine was seized as the product of a reasonable protective search, incident to a lawful stop, and, accordingly, affirm the decision of the trial court.

*Affirmed.*

Willis, J., concurred.

Elder, J., dissenting.

I agree with the majority that once a stop is justified, police officers may maintain the status quo while searching for weapons when reasonably necessary to assure their safety and the safety of any bystanders. I disagree, however, with their conclusion that '' 'a reasonably prudent man in the circumstances [presented in this case] would be warranted in the belief that his safety . . . was in danger,' '' based on the unknown contents of the black velvet pouch. *Michigan v. Long*, 463 U.S. 1032, 1050 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)).

The evidence, viewed in the light most favorable to the Commonwealth, establishes the following: Officer Pennypacker observed Pierson driving his automobile on Atlantic Avenue with an

open container of beer in his hand.[2] Officer Pennypacker verbally requested Pierson to pull over and he complied. Officer Tosloskie, who was with Officer Pennypacker, saw a suspicious exchange whereby Pierson passed something in a closed fist to the passenger, who attempted to conceal the item under her arm before dropping it onto the floor. I would hold that it was *unreasonable* for Officer Tosloskie to think that the black velvet pouch—just large enough to hold an ordinary teabag—could contain a weapon.

The situation here is similar to one in which an officer discovers a container in the suspect's pocket during a pat-down search for weapons. Here, however, Officer Tosloskie admitted that he "didn't [even] think it was necessary" to conduct a patdown of the passenger, Ms. Wolcott. In fact, after he saw the bag fall from under Wolcott's arm, he allowed her to remain in the car while he looked for the bag. Pierson, the driver, had exited the vehicle and was under the control of Officer Pennypacker. The record indicates that, except for the actions associated with the black pouch, Pierson and his passenger were cooperative and compliant. Clearly, the scope of Officer Tosloskie's search should have been *no greater* than that allowed during a patdown search for weapons.

In *Harris v. Commonwealth*, 241 Va. 146, 400 S.E.2d 191 (1991), it was held that the opening of a film canister located pursuant to a patdown search for weapons exceeded the scope of a *Terry* search. While the officer in this case testified that the "drawstrings" at the "top of the bag" were open, he did not know that it "contained Baggies . . . [of] white powder" until he "picked it up." This is exactly the kind of search and seizure not permitted by the fourth amendment without probable cause unless it reasonably relates to the officer's safety. We recently discussed the limitations to be placed on such searches in *Bolda v. Commonwealth*, 15 Va. App. 315, 423 S.E.2d 204 (1992). We held that "[a] bare assertion that an item is believed to be a weapon will not justify a seizure of any item, particularly when the size, character or configuration of the item reasonably could not support the conclusion that the item was a weapon." *Id.* at 318, 423 S.E.2d at 206. I would reach the same conclusion in this case.

Furthermore, the facts in this case, as in *Bolda*, are distinguishable from those in several other Virginia cases where the objective reasonableness of a challenged patdown search was upheld. In *Lansdown v.*

---

[2] The offense for which Officer Pennypacker stopped appellant is a Class IV misdemeanor.

*Commonwealth*, 226 Va. 204, 213, 308 S.E.2d 106, 112 (1983), *cert. denied*, 465 U.S. 1104 (1984), for example, the Court held that the officer could reasonably have believed that the hard, rectangular brass box might have been or contained a weapon. In *Simmons v. Commonwealth*, 217 Va. 552, 231 S.E.2d 218 (1977), the Court held that the officer could reasonably have concluded that the "warm-up jacket sagging in the front" contained a weapon, *id.* at 556, 231 S.E.2d at 221, and, accordingly, he was justified in removing a "hard object," even though it proved ultimately to be a tape recorder. *Id.* at 553, 231 S.E.2d at 219-20. In *Williams v. Commonwealth*, 4 Va. App. 53, 354 S.E.2d 79 (1987), we held that the officer could reasonably have believed that a hard "object that felt big and . . . was bulging out of [Williams'] pocket" was a weapon, even though it was in reality a large roll of one hundred dollar bills. *Id.* at 67, 354 S.E.2d at 87.

In this case, by contrast, a police officer could not reasonably have believed that the black velvet bag the size of a teabag contained a weapon. Tosloskie knew it was small enough to have been passed by Pierson in a "closed hand" and then placed by Wolcott "under her left armpit." He then observed the pouch on the floorboard of the car. In my judgment, his explanation that he thought it might contain a weapon was inherently unreasonable. It is significant to note that no basis for seizure of the bag was offered except for the officer's concern that the bag contained a weapon. Viewed in this light, I would hold that Tosloskie's seizure of the bag at issue was "a search for evidence rather than a protective search for weapons." *See Commonwealth v. Silva*, 318 N.E.2d 895, 901 (Mass. 1974).

Courts in several other jurisdictions have reached this same conclusion when confronted with similar facts:

> [T]he container should not be [seized or] opened unless it might contain a weapon, a judgment which the officer should be expected to make on the basis of its size, weight and feel. Thus it is improper for an officer to open a small zippered coin purse weighing only a few ounces, for it "could not conceivably have contained a gun nor could any officer reasonably have considered that it contained a dangerous weapon of any kind." . . . [S]ome courts have improperly upheld the examination of the contents of containers found on the person by engaging in "fanciful speculation" about what would be useable as a weapon in such a situation.

3 Wayne R. LaFave, *Search and Seizure* § 9.4(d), at 525-26 (2d ed. 1987 & Supp. 1992) (footnotes omitted). In *People v. Martinez*, 801 P.2d 542 (Colo. 1990) (en banc), an officer conducted a patdown search of the appellant during a search of his home pursuant to a warrant. On the appellant's person, the officer found two small pocket knives, a spoon, and a pouch. After feeling several pointed objects through the pouch, the officer opened it and found two screws and two small plastic bags containing methamphetamine. *Id.* at 543. In granting appellant's motion to suppress, the trial court concluded that it was not reasonable for the officer to have believed that the pouch contained a weapon. Sitting en banc, the Supreme Court of Colorado agreed, emphasizing that the officer "failed to establish specific and articulable facts sufficient to support a reasonable suspicion that the contents of the pouch posed a threat to his or others' safety." *Id.* at 545. "[N]o reasonable person," concluded the Court, "could believe that the pouch was a weapon or that it contained a weapon." *Id.*

The Supreme Court of Massachusetts reached the same conclusion in *Commonwealth v. Silva*, 318 N.E.2d 895 (Mass. 1974), a case also involving a search for weapons. In that case, a police officer saw Silva bend down as if to place something under the front seat of his automobile. *Id.* at 897. Another officer then found a small black packet containing heroin under that same seat. *Id.* The trial court denied Silva's motion to suppress the heroin, but the Supreme Court reversed. In so doing, the Court noted that the packet, which weighed no more than two ounces, was made of opaque black plastic and was about three inches in diameter and one inch deep, with a zipper running almost its entire circumference. *Id.* at 901. On that basis, the Court concluded that "[the packet] could not conceivably have contained a gun, nor could an officer reasonably have considered that it contained a dangerous weapon of any kind. The unzipping of the packet, and examination of its contents, were clearly a search for evidence rather than a protective search for weapons." *Id.* For that reason, it reversed Silva's conviction.

I would hold that Officer Tosloskie could not reasonably have believed that the black velvet pouch contained a weapon. Accordingly, his action in picking up the bag from the floorboard of the car amounted to an unconstitutional search and seizure, and appellant's motion to suppress should have been granted.