COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Senior Judge Coleman[*]
Argued at Richmond, Virginia


STACIE LYNN REID

MEMORANDUM OPINION[**] BY
v.   Record No. 0557-00-2        JUDGE SAM W. COLEMAN III
                                          MARCH 13, 2001
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF GOOCHLAND COUNTY
David F. Berry, Judge Designate

Anthony Paone, II (Law Offices of Darvin E.
Satterwhite, on brief), for appellant.


Michael T. Judge, Assistant Attorney General
(Mark L. Earley, Attorney General, on
brief), for appellee.


Stacie Lynn Reid was convicted in a bench trial of

possession of cocaine. On appeal, Reid argues that the trial

court erred by denying her motion to suppress because the

cocaine was seized as the result of an unlawful search of her

purse. She further contends that the evidence was inadmissible

because the officers unlawfully detained her and the driver of

the vehicle in which she was riding by failing to release the

[*] Judge Coleman participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 2000 and thereafter by his designation as a senior judge pursuant to Code § 17.1-401.

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

driver "forthwith" as required by Code § 19.2-74. We disagree and affirm the judgment of the trial court.

BACKGROUND

Shortly after 9:00 p.m. on May 22, 1998, Goochland County Deputy Sheriff James Mann, while on routine patrol, drove through a convenience store parking lot and observed Kevin Michie standing beside a gas pump. Mann knew Michie to be a person who had previously been convicted of weapons, drug, and assault offenses. Mann waited in his vehicle until Michie got into his pickup truck and drove away, and then, Mann followed Michie. Thinking that Michie "might" possess drugs, Mann followed him, hoping to "find probable cause on which to stop him." Mann testified that he paced Michie's vehicle for several miles and observed Michie exceeding the 65 m.p.h. speed limit on Interstate 64.

Mann stopped the vehicle and informed Michie that he had exceeded the speed limit. At that point, Chief Deputy Don Bewkes, who heard on his police radio that Mann had stopped Michie, arrived at the scene. Bewkes approached the passenger-side door of Michie's pickup truck where the defendant, Stacie Reid, was sitting. Bewkes noticed that the pickup truck displayed a rejection sticker rather than a valid inspection sticker. Mann informed Michie that he would issue a

- 2 -

warning for his exceeding the speed limit and a summons for the rejection sticker.

Michie signed the summons, and Mann returned Michie's driving permit and registration card. Mann then asked Michie if he had any firearms, drugs, or contraband in his truck. Michie responded that he did not. Mann asked Michie for permission to search the truck, and Michie refused. Chief Deputy Bewkes then told Mann that because the vehicle did not have a proper inspection sticker, the vehicle could be towed. Michie responded that, if they were going to tow the vehicle, the deputies could search it. At that point Michie and Reid exited the vehicle and the deputies "patted [them] down" for "officer safety."

Mann then requested permission from Reid to search her purse for weapons. Reid consented to the search. Inside the purse, Mann found a small zippered pouch which he described as large enough to hold a penknife. Mann manipulated the pouch from the outside and felt a hard, metallic object. Mann testified that, based on his training and experience in investigating drug cases, the object felt like a device used for smoking drugs. Mann opened the pouch and found a brass pipe. Reid admitted that the pipe was hers and that it was used to smoke marijuana. Mann also found a partially burned marijuana cigarette in Reid's purse. The smoking pipe was seized and

analyzed for drugs; it was found to contain cocaine residue. Reid was charged with possession of marijuana[1] and possession of cocaine.

Michie testified that he observed Deputy Mann following him before being stopped and that he was not speeding. Michie stated that Mann did request to search the truck and he refused to give permission. Michie testified that he later gave Mann permission to search the truck, but only after Mann and Bewkes discussed having the vehicle towed if Michie withheld permission. Michie testified that Mann never patted him down. Michie stated that after Mann searched the truck, Mann approached Reid, removed her purse from her shoulder, and told her that he needed to search the purse. Michie testified that Mann never asked Reid for permission to search her purse. Michie acknowledged that Mann told Reid that he had found the pipe.

Reid filed a motion to suppress the evidence consisting of the pipe and cocaine residue on the ground that it was illegally seized in violation of the Fourth Amendment, and she further objected to the admissibility of the evidence based on its being seized after the officers violated Michie's rights in violation of Code § 19.2-74. Code § 19.2-74 provides that whenever any

---

[1] The misdemeanor possession of marijuana charge was dismissed.

person is detained for a misdemeanor or an offense for which no jail sentence could be imposed, the officer shall issue a summons and upon the person's written promise to appear, the officer "shall forthwith release him from custody."  Reid argues that Mann's failure to forthwith release Michie from custody resulted in her being illegally detained and the pipe and drug residue being illegally seized.  The trial court denied the motion to suppress and overruled Reid's objection to the admissibility of the evidence, finding that she voluntarily consented to the search of her purse.

### ANALYSIS

When we review a trial court's denial of a motion to suppress, "[w]e view the evidence in a light most favorable to . . . the prevailing party below, and we grant all reasonable inferences fairly deducible from that evidence."  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).  "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them."  McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).  "However, we consider de novo whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment."  Hughes v. Commonwealth, 31 Va. App. 447, 454, 524

- 5 -

S.E.2d 155, 159 (2000) (en banc) (citing McGee, 25 Va. App. at 198, 487 S.E.2d at 261). The trial judge expressly ruled that he found "no reason to doubt the credibility of the officers in this case." Thus, we resolve any conflict in the evidence in favor of the Commonwealth.

> "A warrantless search is per se unreasonable and violative of the Fourth Amendment of the United States Constitution, subject to certain exceptions." Tipton v. Commonwealth, 18 Va. App. 370, 373, 444 S.E.2d 1, 3 (1994) (citation omitted). However, searches made by law enforcement officers pursuant to a valid consent to search do not implicate the Fourth Amendment. See Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045, 36 L. Ed. 2d 854 (1973); Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988) (en banc). When relying upon consent as the justification for a search, the Commonwealth must prove, based upon the totality of the circumstances, that the consent was freely and voluntarily given. See Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797 (1968); Hairston v. Commonwealth, 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975); Commonwealth v. Rice, 28 Va. App. 374, 378, 504 S.E.2d 877, 879 (1998).

Hughes, 31 Va. App. at 454, 524 S.E.2d at 159. "[W]hether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth, 412 U.S. at 227.

Although Deputy Mann acknowledged that he began following Michie in hopes of "find[ing] probable cause on which to stop him" because he "believed" that Michie "might" possess drugs, Mann's subjective intent is of no consequence if, in fact, the deputy observes conduct that constitutes probable cause to believe that a crime or traffic offense has been committed. Here, the trial judge accepted as fact Deputy Mann's testimony that he observed Michie's truck speeding. Thus, Mann lawfully stopped Michie's vehicle after having determined that Michie was exceeding the speed limit. See Whren v. United States, 517 U.S. 806, 813 (1996) (finding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis"). While investigating the speeding violation, Mann was alerted to the fact that the vehicle displayed a rejection sticker.

Mann decided to give Michie a warning for the speeding violation and to issue him a summons for driving the truck with a rejection sticker. After Mann returned Michie's driver's license and registration card, he asked Michie if he had any contraband, drugs, or firearms in the vehicle. See Ohio v. Robinette, 519 U.S. 33, 39-40 (1996) (holding that consensual encounter may begin after legitimate detention has ended even if detainee is not told he is "free to go"). Mann requested permission from Michie to search the truck, which Michie initially denied. Only after Deputies Mann and Bewkes discussed

- 7 -

having the truck towed did Michie grant Mann permission to search the truck.  Cf. Reittinger v. Commonwealth, 260 Va. 232, 236-37, 532 S.E.2d 25, 27-28 (2000) (holding that defendant was unlawfully seized where, after officer completed lawful traffic stop and informed defendant he was free to go, officer requested permission three times to search defendant's vehicle).[2]

After Michie consented to a search of his truck, Mann asked Michie and Reid to get out of the vehicle.  Mann requested and received permission from Michie and Reid to conduct a pat-down search for weapons of each of them.  Noticing that Reid had removed her purse from the vehicle, Mann requested permission to search it for weapons and Reid consented to the search.  Upon searching Reid's purse, Mann found a small zippered pouch large enough to hold a penknife.  Upon feeling the pouch, Mann felt an object that he readily identified as a device suitable for smoking drugs.  Believing that the object was contraband, Deputy Mann lawfully removed the item from the pouch.  See Minnesota v. Dickerson, 508 U.S. 366, 375-76 (1993) (finding that the same practical considerations justifying a warrantless seizure under the "plain view" doctrine apply to a warrantless seizure under the "plain feel" doctrine); see also Pierson v. Commonwealth,

---

[2] Whether Michie voluntarily consented to a search of his truck is not dispositive or germane to the issues before us in Reid's appeal.

16 Va. App. 202, 205, 428 S.E.2d 758, 760 (1993) (upholding search for weapons of small velvet pouch, "just large enough to hold an ordinary teabag," as reasonable where officer observed suspicious and furtive conduct by passenger in trying to secrete the pouch).

Here, the evidence supports the trial judge's finding that Reid voluntarily consented to the search of her purse. When Mann requested permission to search her purse, there was no show of force or claim of legal right or authority to search the purse absent consent; Mann did not threaten Reid, and the record does not show that Reid was deceived as to the deputy's purpose. See generally Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 480-81 (1989) (en banc) (stating that police need not warn the suspect that he has a right to refuse the search, but the suspect's knowledge of his right to refuse is a factor in considering the totality of the circumstances). The fact that Reid's consent to search the purse may have been influenced by her belief that if she withheld consent the deputies would tow Michie's truck and leave her stranded on Interstate 64 does not render her consent legally involuntary.

Regardless of whether the officers had authority to tow and impound Michie's truck or otherwise prevent him from driving the vehicle because the vehicle displayed a rejection sticker, Reid remained free to leave the area and, thus, she was not

unlawfully seized.  A person is "seized" under the Fourth Amendment "only if, in view of all of the circumstances surrounding an incident, a reasonable person would have believed that [she] was not free to leave."  Mendenhall v. United States, 446 U.S. 544, 554 (1980) (plurality opinion).  "In order for a seizure to occur, an individual must be under some physical restraint by an officer or have submitted to the show of police authority."  Thomas v. Commonwealth, 24 Va. App. 49, 54, 480 S.E.2d 135, 137 (1997) (en banc) (citing California v. Hodari D., 499 U.S. 621, 626 (1991)).  See also Rettinger, 260 Va. at 236, 532 S.E.2d at 27 (stating that whether a person is seized in violation of the Fourth Amendment is reviewed de novo on appeal).  "'[T]he test for existence of a "show of authority" is an objective one:  not whether the citizen perceived that [she] was being ordered to restrict [her] movement, but whether the officer's words and actions would have conveyed that to a reasonable person.'"  Wallace v. Commonwealth, 32 Va. App. 497, 503, 528 S.E.2d 739, 741 (2000) (quoting Hodari D., 499 U.S. at 628).

> Among the factors to be considered in determining whether a reasonable person under the circumstances would have believed he or she was not free to ignore the request of the officer are:  "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language, or tone of voice

> indicating that compliance with the
> officer's request might be compelled."

Weathers v. Commonwealth, 32 Va. App. 652, 659-60, 529 S.E.2d 847, 850-51 (2000) (emphasis added) (quoting Mendenhall, 446 U.S. at 554).

Here, the officers did not, by their words or actions, convey a message that Reid was not free to leave by asking her to exit the vehicle in order to facilitate a search of the truck. They in no way indicated to Reid that if the vehicle was towed that she would be detained or would not be free to go. Irrespective of their authority to detain Michie, in the absence of his willingness to remain, regardless of the situation as it pertained to Michie, the officers did not prevent Reid from leaving and they exercised no legal restraint of her that was not consensual. Although Reid may have been confronted with undesirable or inconvenient options if she chose to leave the scene when the officers searched Michie's truck, or if the officers had towed the truck or otherwise prevented Michie from driving away, Reid was under no legal restraint or compulsion to remain at the scene. Under these circumstances, a reasonable person would have believed the officers had no legal right to detain her and that she was free to terminate the encounter, even though as a practical matter she might not wish to pursue that course. Accordingly, the trial court did not err by finding

- 11 -

that Reid voluntarily consented to the search of her purse and in denying Reid's motion to suppress.

Reid's contention that the evidence was inadmissible because the officer did not release Michie "forthwith" as required by Code § 19.2-74 after issuing the summons is without merit. We have stated that "'[h]istorically, searches or seizures made contrary to provisions contained in Virginia statutes provide no right of suppression unless the statute supplies that right.'" Troncoso v. Commonwealth, 12 Va. App. 942, 944, 407 S.E.2d 349, 350 (1991) (citations omitted); see also Taylor v. Commonwealth, 28 Va. App. 638, 641, 507 S.E.2d 661, 663 (1998) (stating that alleged violation of Code § 19.2-59.1 does not provide basis for suppression of illegally obtained evidence); Webber v. Commonwealth, 26 Va. App. 549, 560-61, 496 S.E.2d 83, 88 (1998) (applying same principle to alleged violation of Code § 19.2-80); Janis v. Commonwealth, 22 Va. App. 646, 651, 472 S.E.2d 649, 651-52 (applying same principle to alleged violation of Code § 19.2-54), aff'd on reh'g en banc, 23 Va. App. 696, 479 S.E.2d 534 (1996). Therefore, assuming that Deputy Mann violated Code § 19.2-74 by requesting permission to search the truck and by failing to release Michie "forthwith" after issuing the summons, and, assuming further that Reid could properly challenge such a violation, the statutory violation would not provide a basis for which to exclude the evidence.

Accordingly, we affirm the trial court's denial of Reid's motion to suppress and her challenge to the admissibility of the evidence based on a violation of Code § 19.2-74.  We, therefore, affirm.

Affirmed.