COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Haley
Argued at Chesapeake, Virginia


RUSSELL SCOTT SMITH

                                      MEMORANDUM OPINION[*] BY
v.      Record No. 0070-05-1      JUDGE LARRY G. ELDER
                                        NOVEMBER 15, 2005
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
William C. Andrews, III, Judge

Charles E. Haden for appellant.

Josephine F. Whalen, Assistant Attorney General (Judith W.
Jagdmann, Attorney General, on brief), for appellee.


Russell Scott Smith (appellant) appeals from his bench trial conviction for possession of

marijuana with intent to distribute.  On appeal, he contends the search of his vehicle, which

yielded the marijuana on which his conviction was based, violated the Fourth Amendment and,

thus, that the trial court erroneously denied his motion to suppress.  We hold the search, which

occurred during the course of a lawful traffic stop, was supported by reasonable suspicion to

believe appellant had a weapon in the vehicle.  Thus, we affirm.

On appeal of the denial of a motion to suppress, we view the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom.  Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

"[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without

evidence to support them[,] and we give due weight to the inferences drawn from those facts by

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App.

193, 198, 487 S.E.2d 259, 261 (1997) (en banc) (citing Ornelas v. United States, 517 U.S. 690,

699, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996)).  However, we review *de novo* the trial

court's application of defined legal standards.  Ornelas, 517 U.S. at 699, 116 S. Ct. at 1663.

"Once an officer has lawfully stopped a suspect, he is 'authorized to take such steps as

[are] reasonably necessary to protect [his and others'] personal safety and to maintain the status

quo during the course of the stop.'"  Servis v. Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d

156, 162 (1988) (quoting United States v. Hensley, 469 U.S. 221, 235, 105 S. Ct. 675, 684, 83

L. Ed. 2d 604 (1985)).  The United States Supreme Court has

> expressly recognized . . . that protection of police and others can
> justify protective searches when police have a reasonable belief
> that the suspect poses a danger, that roadside encounters between
> police and suspects are especially hazardous, and that danger may
> arise from the possible presence of weapons in the area
> surrounding a suspect.

Michigan v. Long, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3480-81, 77 L. Ed. 2d 1201 (1983).  It

has held these principles

> compel [the] conclusion the search of the passenger compartment
> of an automobile, limited to those areas in which a weapon may be
> placed or hidden, is permissible if the police officer possesses a
> reasonable belief based on "specific and articulable facts which,
> taken together with the rational inferences from those facts,
> reasonably warrant" the officer in believing that the suspect is
> dangerous and the suspect may gain immediate control of
> weapons.

Id. at 1049, 103 S. Ct. at 3481 (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20

L. Ed. 2d 889 (1968)); see Pierson v. Commonwealth, 16 Va. App. 202, 204-05, 428 S.E.2d 758,

759-60 (1993); Glover v. Commonwealth, 3 Va. App. 152, 156-57, 348 S.E.2d 434, 438-39

(1986).  "If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested."

Long, 463 U.S. at 1050, 103 S. Ct. at 3481.  "If the officer 'should . . . discover contraband other

than weapons' during his investigation, 'he . . . cannot be required to ignore [it], and the Fourth Amendment does not require its suppression in such circumstances.'" Pierson, 16 Va. App. at 204, 428 S.E.2d at 759-60 (quoting Long, 463 U.S. at 1050, 103 S. Ct. at 3481).

We applied these principles in Pierson, in which the officers stopped the driver of a vehicle to issue a citation for an open container violation. Id. at 203, 428 S.E.2d at 759. While the driver and his passenger were still in the vehicle, the officers observed him hand something to his passenger, who attempted to hide the object first behind her leg and then under her arm. Id. When the officers asked the passenger what the object was, she "replied that she did not 'have anything,' but 'at that time a velour bag fell out from under her arm.'" Id. at 204, 428 S.E.2d at 759. Fearing the bag might contain a weapon, the officers seized it and discovered it contained drugs rather than a weapon. Id. We held that, "during a lawful stop of defendant's vehicle, Officer Tosloskie observed suspicious and furtive conduct under circumstances that prompted understandable concern for his security, and he acted reasonably and appropriately to minimize the threat." Id. at 205, 428 S.E.2d at 760. We held those facts satisfied Long's requirement that "the police officer [must] possess[] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Long, 463 U.S. at 1049, 103 S. Ct. at 3481 (quoting Terry, 392 U.S. at 21, 88 S. Ct. at 1880).

Similarly here, the evidence supported a finding that a firearm may have been present in appellant's vehicle, thereby supporting a limited search of appellant's vehicle. The police encountered appellant after dark in "a high-crime, high-drug" area, and once appellant spotted the police car traveling behind him, he engaged in furtive conduct which one of the officers

- 3 -

testified led him to believe, based on his experience as a police officer, that appellant was trying to secrete a firearm beneath the front passenger seat of his vehicle.

While appellant engaged in the furtive conduct, his car "swerved off the road," "almost striking the curb." Based on appellant's erratic driving, the officers initiated a traffic stop. When they asked appellant for his license and registration, appellant became "very loud, verbal," saying, "Why did you stop me?" Officer Wilson tried to calm appellant, but appellant again became "extremely loud" and "went into his pocket several times," ostensibly "to find his license." Appellant remained agitated and began "screaming at" a family member he observed across the parking lot. Due to appellant's disruptive behavior, Officer Wilson decided to place him in the police vehicle and began to conduct "a quick pat-down of [appellant's] person." Appellant then "became physically disruptive," "throw[ing] his arms around and mov[ing] his body around" and "shouting [they] had no reason to search" or detain him. When the officers had completed the detention and placed him in their vehicle, Officer Wilson remained with appellant while Officer Lyon went directly to the front passenger seat of appellant's vehicle, leaned into the car, and spotted a white plastic bag. He could not see what was inside the bag, but believing it may have contained a firearm, he reached in and pulled it out, at which time he could immediately tell it contained marijuana rather than a firearm.

Thus, in appellant's case, as in Pierson, the officers had reasonable suspicion to believe appellant may have constructively possessed a weapon over which he "may gain immediate control." Long, 463 U.S. at 1049, 103 S. Ct. at 3481. The Supreme Court has held that, even if a suspect is taken into custody temporarily, he "might . . . break away from police control and retrieve a weapon from his automobile." Id. at 1051, 103 S. Ct. at 3482. In addition, "if the suspect is not placed under arrest, he will [eventually] be permitted to reenter his automobile, and he will then have access to any weapons inside." Id. at 1051-52, 103 S. Ct. at 3482.

We applied these principles in Glover, 3 Va. App. at 156-57, 348 S.E.2d at 438-39, to uphold the search of a gym bag. Officers had seen Glover engage in furtive movements involving a gym bag, and we upheld a search of the bag by one officer while Glover was in the custody of a second officer. Id. The United States Supreme Court has stressed that "the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected, and the officer must make a 'quick decision as to how to protect himself and others from possible danger . . . .'" Long, 463 U.S. at 1052, 103 S. Ct. at 3482 (quoting Terry, 392 U.S. at 28, 88 S. Ct. at 1883). In such circumstances, the Court "has *not* required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a Terry encounter." Id. at 1052, 103 S. Ct. at 3482 (emphasis added). Rather, as with the scope of a permissible search conducted pursuant to an arrest, the Court has adopted a "bright-line," "workable rule"--upon proof of reasonable suspicion that a Terry suspect may be armed and dangerous, that permits at least a limited search of the interior of an automobile of which he has been a "recent occupant" because "'articles inside the relatively narrow compass of the passenger compartment . . . are in fact generally, if not inevitably, within "the area into which [the Terry suspect] might reach in order to grab a weapon" . . . .'" Id. at 1049, 103 S. Ct. at 3480 (quoting New York v. Belton, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed. 2d 768 (1981) (quoting Chimel v. California, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685 (1969))).

Courts in other jurisdictions have reached similar results. See, e.g., United States v. Paulino, 850 F.2d 93, 94, 97-98 (2d Cir. 1988) (holding search involving lifting of floor mat reasonable where officers approached car that was "double-parked" in high-crime neighborhood after dark, observed backseat passenger engage in furtive movements while officers attempted to obtain driver's license and registration, and ordered driver and two passengers out of car before conducting search); United States v. Evans, 994 F.2d 317, 319-21 (7th Cir. 1993) (upholding

- 5 -

limited search beneath vehicle seat where officers observed defendant speed through high-crime area, stop in front of reputed drug house, and reach forward for several seconds as if "to place or retrieve something under the seat" immediately after they pulled up behind him and activated their lights and siren, even though search occurred after both defendant and passenger had been taken to the rear of the car and passenger had been handcuffed for officers' safety); People v. Altman, 938 P.2d 142, 145-47 (Colo. 1997) (upholding limited search of area beneath passenger seat during traffic stop where police "saw on the floorboard between [passenger's] legs a bag of blue pills and a jar with a substance in it," passenger appeared "unusually nervous," and passenger was seen "bend[ing] over and mak[ing] motions toward the bottom of his seat" before being removed from car and detained by officer at rear of vehicle while other officer searched); State v. Dilyerd, 467 So. 2d 301, 304-05 (Fla. 1985) (applying Long to validate officer's searching beneath passenger seat where two occupants of parked car were trespassing in orange grove and when officer approached car and shined spotlight inside, passenger "leaned forward and appeared to do something with his hands on the floorboard of the car," even though officer did not conduct search until after he had ordered occupants to exit vehicle and a second officer had arrived to "watch" them); State v. Bobo, 524 N.E.2d 489, 491-93 (Ohio 1988) (holding that after two occupants of parked car exited vehicle at request of police during legitimate Terry stop in high-crime area after dark, three police officers were justified in searching beneath passenger seat of car because, before occupants had exited car, officers had observed one of car's occupants disappear from view, "pop[] up in the passenger's seat," "look[] at the police officers," and "then bend[] down as if to hide something under the front seat").

For these reasons, we hold the search, which occurred during the course of a lawful traffic stop, was constitutional, despite the fact that appellant was in police custody at the time,

because the search was supported by reasonable suspicion to believe appellant had a weapon in the vehicle.  Thus, we affirm.

<u>Affirmed.</u>