COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Petty and Alston
Argued at Chesapeake, Virginia


DAVID CHARLES JOHNSON

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0768-10-1                       JUDGE LARRY G. ELDER
                                                         MAY 17, 2011
COMMONWEALTH OF VIRGINIA


                  FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                              Wilford Taylor, Jr., Judge

            Charles E. Haden for appellant.

            Susan M. Harris, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


       David Charles Johnson (appellant) appeals from his bench trial conviction for possession

of more than one-half ounce but less than five pounds of marijuana with intent to sell in violation

of Code § 18.2-248.1.  On appeal, appellant contends the trial court erroneously denied his

motion to suppress the marijuana, which he argues was found as a result of an unconstitutional

search of his vehicle.  He also contends the evidence was insufficient to support his conviction

because it failed to prove the quantity of marijuana he possessed was more than one-half ounce.

We hold the search of appellant's vehicle was not unconstitutional but that the evidence was, in

fact, insufficient to prove he possessed more than one-half ounce of marijuana.  Thus, we remand

for resentencing on the lesser-included offense of possession of marijuana with intent to

distribute, based on the parties' consent to this remedy.

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

A. MOTION TO SUPPRESS: THE SEARCH OF THE CAR

On appeal of a ruling denying a motion to suppress, the appellant has the burden to show the trial court's ruling constituted reversible error. Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). Our examination of this issue "presents a mixed question of law and fact that we review *de novo* . . . . In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment." Id. (citations omitted).

Appellant contends the recent holding in Arizona v. Gant, 556 U.S. ___, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), which narrowed the scope of the automobile search that may be conducted upon the arrest of a recent occupant of a motor vehicle, rendered the search of his vehicle unconstitutional and required the suppression of all evidence obtained as a result. We disagree.

The United States Supreme Court held as follows in Gant:

> Police may search a vehicle *incident to a recent occupant's arrest* only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable *unless police* obtain a warrant or *show that another exception to the warrant requirement applies*.

Id. at ___, 129 S. Ct. at 1723-24, 173 L. Ed. 2d at 501 (emphases added). Thus, in deciding Gant, the Court specifically acknowledged the continuing viability of other bases justifying the search of an automobile or its passengers:

> For instance, Michigan v. Long, 463 U.S. 1032[, 1049, 103 S. Ct. 3469, 3481, 77 L. Ed. 2d 1201, 1220] (1983), permits an officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." If there is probable cause to believe a vehicle

- 2 -

> contains evidence of criminal activity, United States v. Ross, 456 U.S. 798, 820-21[, 102 S. Ct. 2157, 2170-71, 72 L. Ed. 2d 572, 591] (1982), authorizes a search of any area of the vehicle in which the evidence might be found. . . . Ross allows searches for evidence relevant to offenses other than the offense of arrest . . . .

Id. at ___, 129 S. Ct. at 1721, 173 L. Ed. 2d at 498 (citations omitted).

As the United States Supreme Court "expressly recognized" in Long, "protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger[;] . . . roadside encounters between police and suspects are especially hazardous[;] and . . . danger may arise from the possible presence of weapons in the area surrounding a suspect." 463 U.S. at 1048-49, 103 S. Ct. at 3480-81, 77 L. Ed. 2d at 1219-20. "If a suspect is 'dangerous,' he is no less dangerous simply because he is not arrested," for once he is released from police detention, he will be allowed to re-enter the vehicle in which he may have a weapon. Id. at 1050, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220. These principles

> compel [the] conclusion the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Id. at 1049, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220 (quoting Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968)); see Pierson v. Commonwealth, 16 Va. App. 202, 204-05, 428 S.E.2d 758, 759-60 (1993); Glover v. Commonwealth, 3 Va. App. 152, 156-57, 348 S.E.2d 434, 438-39 (1986). The facts that give rise to the reasonable suspicion guide the scope of what constitutes a reasonable search. See Terry, 392 U.S. at 30, 88 S. Ct. at 1884, 20 L. Ed. 2d at 911.

We applied these principles in Pierson, in which officers stopped the driver of a vehicle to issue a citation for an open container violation. 16 Va. App. at 203, 428 S.E.2d at 759. While

- 3 -

the driver and his passenger were still in the vehicle, the officers observed him hand something to his passenger, who attempted to hide the object first behind her leg and then under her arm. Id. When the officers asked the passenger what the object was, she "replied that she did not 'have anything,' but 'at that time a velour bag fell out from under her arm.'" Id. at 204, 428 S.E.2d at 759. Fearing the bag might contain a weapon, the officers seized it and discovered it contained drugs rather than a weapon. Id. We held that, "during a lawful stop of defendant's vehicle, Officer Tosloskie observed suspicious and furtive conduct under circumstances that prompted understandable concern for his security, and he acted reasonably and appropriately to minimize the threat." Id. at 205, 428 S.E.2d at 760. We held those facts satisfied Long's requirement that "the police officer [must] possess[] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."[1] Long, 463 U.S. at 1049, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220 (quoting Terry, 392 U.S. at 21, 88 S. Ct. at 1880, 20 L. Ed. 2d at 906).

---

[1] Courts in other jurisdictions have reached similar results. See, e.g., United States v. Paulino, 850 F.2d 93, 94, 97-98 (2d Cir. 1988) (holding a search involving lifting a floor mat was reasonable where officers approached a car that was "double-parked" in a high-crime neighborhood after dark, observed a backseat passenger engage in furtive movements while the officers attempted to obtain the driver's license and registration, and ordered the driver and two passengers out of the car before conducting a search); United States v. Fryer, 974 F.2d 813, 819 (7th Cir. 1992) (upholding search where a "veteran" police officer "patrolling a marginally safe neighborhood, in the wee hours of the morning," observed a traffic violation and, after signaling the car to pull over, "observed furtive movements between the driver and the passenger, as if they were passing something between them"); United States v. Nash, 876 F.2d 1359, 1360-61 (7th Cir. 1989) (upholding a search involving the lifting of a jacket "tucked under defendant's lap and stretched out to the floor" where an officer in an unmarked car "identifiable as a police car" followed a suspected drunk driver and, when he reached a distance of one car length away, observed the defendant make a "furtive gesture" involving "rais[ing] himself up from the car seat" and "reaching toward the floor"); State v. Dilyerd, 467 So. 2d 301, 304-05 (Fla. 1985) (applying Long to validate an officer's searching beneath the passenger seat where two occupants of a parked car were trespassing in an orange grove and when the officer approached the car and shined a spotlight inside, the passenger "leaned forward and appeared to do something with his hands on the floorboard of the car"); State v. Flowers, 734 N.W.2d 239, 252

Similarly here, the evidence supported a finding that a firearm may have been present in appellant's vehicle, thereby supporting a limited search of the vehicle. Officer Giles approached appellant's vehicle in a high crime neighborhood known for robberies and narcotics because the vehicle was improperly stopped on the side of the road facing oncoming traffic. When Officer Giles pulled his marked police cruiser to a stop facing appellant's front windshield and activated his lights, appellant, the vehicle's driver, "looked at [Officer Giles]" and immediately began to engage in what Giles viewed as furtive movements. Appellant "flipped his shoulder," and with his right arm, appellant appeared to be "shoving something underneath or behind the driver's seat," in an apparent effort to conceal something. Officer Giles testified that appellant's furtive movements caused him to fear appellant might be attempting to hide a weapon and caused Giles to be concerned "for officer safety." When Officer Giles' back-up officer arrived and stood with the three occupants outside the car, Giles began to check for weapons only in the area of the vehicle toward which appellant had directed his furtive movements. See Glover, 3 Va. App. at 155, 157, 348 S.E.2d at 437, 438 (involving the search of a gym bag from which a vehicle's driver, who the officer suspected was contemplating robbing a convenience store, removed his hand when the officer approached).

Here, the evidence, viewed in the light most favorable to the Commonwealth, supports the conclusion that Officer Giles' actions were objectively reasonable and, therefore, constitutionally justified under the facts as they existed at the time of the detention and search,

---

& n.13 (Minn. 2007) (upholding the "frisk" of a car where officers who had reasonable suspicion for a stop saw the driver engage in "suspicious movements" inside the vehicle for 45 seconds before complying with their signal to him to pull him over); State v. Bobo, 524 N.E.2d 489, 491-93 (Ohio 1988) (holding that after two occupants were removed from a parked car during a Terry stop in a high-crime area after dark, the three police officers were justified in searching beneath the passenger seat because, before the occupants had exited, the officers had observed one of the occupants disappear from view, reappear and "look[] at the police officers," and "then bend[] down as if to hide something under the front seat").

both (1) so that Giles could proceed safely with the original purpose of the encounter, which was to address the parking violation, without fear that appellant or one of his two passengers would leave the area at the rear of the car where they had been ordered to remain in order to re-enter the car and obtain a weapon and (2) so that Officer Giles could "ensure that there were no . . . weapons within [appellant's] immediate grasp before permitting him to reenter his automobile."[2] Long, 463 U.S. at 1035-36, 1049, 103 S. Ct. at 3473, 3481, 77 L. Ed. 2d at 1210-11, 1220-21 (also recognizing that "a Terry suspect in Long's position[, who was being questioned by two officers at the rear of his vehicle,] [may] break away from police control and retrieve a weapon from his automobile").

In the area toward which appellant had directed his furtive movements, Officer Giles observed a lunch cooler which was large enough to contain a weapon. As Officer Giles prepared to pick up the lunch cooler to look inside, he noted the distinctive "odor of marijuana coming from that area." At that point, Officer Giles had both reasonable suspicion to look inside the cooler for a weapon and probable cause to check the cooler for marijuana. See Pierson, 16 Va. App. at 204, 428 S.E.2d at 759-60 ("If the officer 'should . . . discover contraband other than weapons' during his investigation, 'he . . . cannot be required to ignore [it], and the Fourth Amendment does not require its suppression in such circumstances.'" (quoting Long, 463 U.S. at 1050, 103 S. Ct. at 3481, 77 L. Ed. 2d at 1220)); see also Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S. Ct. 2013, 2014, 144 L. Ed. 2d 442, 445 (1999) (holding that where probable cause for the search of an automobile exists, an officer need not show exigent circumstances beyond the inherent mobility of the vehicle in order to justify a search); Cherry v.

---

[2] Appellant concedes on brief that, at the time of the search of the vehicle, Officer Giles had not yet "r[u]n a check on [appellant] and determined he had an outstanding warrant on file." Thus, prior to searching the vehicle, Officer Giles' only knowledge was that he was detaining appellant to issue a summons for the vehicular violation, after which appellant likely would be released.

Commonwealth, 44 Va. App. 347, 357-59, 605 S.E.2d 297, 302 (2004) (holding that "plain smell," a variant on the "plain view" doctrine, provides probable cause for a search). That Officer Giles "never wrote the ticket for illegal parking" and may have "had no intention [of doing so]" is irrelevant. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" Brigham City v. Stuart, 547 U.S. 398, 404, 126 S. Ct. 1943, 1948, 164 L. Ed. 2d 650, 658 (2006) (quoting Scott v. United States, 436 U.S. 128, 138, 98 S. Ct. 1717, 1723, 56 L. Ed. 2d 168, 178 (1978) (emphasis added)).

Thus, we conclude the trial court did not err in denying the motion to suppress.

## B. SUFFICIENCY OF THE EVIDENCE TO PROVE MARIJUANA WEIGHT

On appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless it is plainly wrong or without evidence to support it. E.g., Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005).

Appellant does not contest the sufficiency of the evidence to prove he possessed the marijuana and did so with an intent to distribute it. He challenges only the sufficiency of the evidence to prove the quantity of marijuana he possessed was "more than one-half ounce but not more than five pounds," as required to support imposition of punishment for a Class 5 felony. He argues the evidence was sufficient to convict him only for the lesser-included offense of possession with intent to distribute, a Class 1 misdemeanor, because the weight of 0.92 ounce provided in the certificate of analysis indicated it included the innermost packaging and because the record contained no evidence as to what the eight innermost plastic bags containing the plant

material weighed. Thus, he contends, the Commonwealth failed to meet its burden of proving the plant material itself weighed more than one-half ounce.

"Proof that the accused possessed marijuana, as that material is defined in Code § 54.1-3401, is an essential element of each of the offenses proscribed by Code § 18.2-248.1. Likewise, proof that the accused possessed the weight of marijuana proscribed by Code § 18.2-248.1(a)(2)[, more than one-half ounce but not more than five pounds,] is an essential element of that offense." Hill v. Commonwealth, 17 Va. App. 480, 484-85, 438 S.E.2d 296, 299 (1993), quoted with approval in Brown v. Commonwealth, 56 Va. App. 8, 11-13, 690 S.E.2d 301, 303 (2010) (holding the General Assembly's alteration of the Code § 54.1-3401 definition of marijuana subsequent to Hill "effectively overruled Hill" to the extent that "where the [marijuana] stalks are combined with other parts of the marijuana plant, . . . the Commonwealth may [now] use the weight of the stalks combined with the other parts of the marijuana plant" to prove the amount of marijuana possessed). "'It is elementary that the burden is on the Commonwealth to prove every essential element of the offense beyond a reasonable doubt.' This fundamental precept has been the bedrock of Virginia's criminal jurisprudence since the inception of this Commonwealth." Bishop v. Commonwealth, 275 Va. 9, 12, 654 S.E.2d 906, 908 (2008) (quoting Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 629 (1970)). Thus, the Commonwealth bore the burden of proving beyond a reasonable doubt that the marijuana appellant possessed weighed more than one-half ounce. Evidence that creates only a "suspicion or probability" of guilt does not satisfy the Commonwealth's burden of proof. Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997).

We considered a similar issue in Hill, which also involved the sufficiency of the evidence to prove the marijuana the defendant possessed weighed more than one-half ounce. 17 Va. App. at 483, 438 S.E.2d at 298. The version of Code § 54.1-3401 applicable in that case specifically

defined "marijuana" "'not [to] include . . . the mature stalks . . . or the sterilized seed of such plant.'" 17 Va. App. at 483, 438 S.E.2d at 298. The Commonwealth offered evidence that the contents of one of the two bags of marijuana weighed less than one-half ounce. Id. at 482, 438 S.E.2d at 297. The second bag "contained approximately two-and-one-half ounces of material that consisted of leaf marijuana, a mature marijuana stalk, marijuana stems, and marijuana seeds." Id. We held that although the Commonwealth proved the marijuana the defendant possessed "weighed in excess of one-half ounce, the evidence failed to prove beyond a reasonable doubt that the marijuana, less the weight of the mature stalk and seeds, weighed more than one-half ounce." Id. at 485, 438 S.E.2d at 299. We rejected the Commonwealth's "suggest[ion] that because the proof only had to establish more than one-half ounce of marijuana, the trier of fact could have inferred that 2.98 ounces, less the mature stalks and seeds, exceeded one-half ounce." Id. We held that "[o]n the evidence in th[e] record, any such inference would have been purely speculative because no facts were proved that would have supported such an inference." Id.

Although the General Assembly subsequently altered the definition of marijuana contained in Code § 54.1-3401, see Brown, 56 Va. App. at 11-13, 690 S.E.2d at 303, the overarching holding of Hill remains the same: The Commonwealth must prove the weight of the marijuana, as that term is defined in the applicable version of Code § 54.1-3401, in the defendant's possession was more than one-half ounce. Here, the only evidence the Commonwealth offered was that the "eight (8) plastic bags [admitted as Commonwealth's Exhibit 1, with the corresponding certificate of analysis admitted as Commonwealth's Exhibit 2,] each containing plant material," "*including [the] innermost packaging*," weighed "0.92 ounce." (Emphasis added). Just as the evidence in Hill failed to establish the weight of the marijuana stalks, stems, and sterilized seeds, the evidence here failed to establish the weight of the eight

- 9 -

plastic bags contained in the 0.92-ounce weight total. Although the plant material and innermost packaging were in evidence, the trial court made no findings regarding its assessment of the relative weight of the packaging as compared to the plant material. Thus, the evidence in the record fails to support an inference that the plant material alone weighed more than one-half ounce, and the evidence does not establish the weight element of the offense.[3]

### III.

For these reasons, we reverse appellant's conviction for possession of more than one-half ounce of marijuana with an intent to distribute. Because the parties agree that, in the event of such disposition, the case should be remanded to the trial court for sentencing on the lesser-included offense of possession of marijuana with intent to distribute under Code § 18.2-148.1, a misdemeanor, we remand the case to the trial court for that purpose. See Britt v. Commonwealth, 276 Va. 569, 576, 667 S.E.2d 763, 766-67 (2008); Commonwealth v. South, 272 Va. 1, 630 S.E.2d 318, 319 (2006); see also Cline v. Commonwealth, 53 Va. App. 765, 770-71, 675 S.E.2d 223, 225 (2009).

Reversed and remanded.

---

[3] Appellant also contends the laboratory analysis indicated only a portion of one of the eight bags of suspected marijuana was tested and, as a result, that the evidence failed to prove the entire quantity of the green leafy substance was marijuana. Because the lesser-included offense is not dependent upon the Commonwealth's establishing appellant possessed any minimum quantity of marijuana, only that he possessed some quantity of marijuana and did so with the intent to distribute it, elements of proof appellant does not contest, this claim is moot.