## Alexandria

### LONNELL G. GLOVER

v.

### COMMONWEALTH OF VIRGINIA

No. 0373-85

Decided September 16, 1986

COUNSEL

Susan L. Korfanty (John W. Shanley, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (William G. Broaddus, Attorney General, on brief), for appellee.

OPINION

COLE, J. — Upon his trial by the court without a jury, the appellant, Lonnell G. Glover, was found guilty of possessing a weapon under Code § 18.2-308.2(A), after having been previously convicted of robbery, and guilty of possession of cocaine. On February 19, 1985, he was sentenced to three years on the handgun charge and one year on the cocaine charge. On appeal, Glover presents the following issues: (1) whether the search of appellant's vehicle violated his fourth amendment rights; (2) whether the evidence was sufficient to prove appellant's possession of a handgun; (3) whether the evidence was sufficient to prove appel-

lant's possession of cocaine; and (4) whether the trial court erred in ruling that the nature of appellant's prior conviction was admissible.

## I.

The evidence presented upon Glover's motion to suppress the handgun was that on September 23, 1984, Officer John Horvath, an off-duty Alexandria police officer, was working in full uniform as a security guard at a 7-11 store in Alexandria. According to Horvath, he first observed Glover at about 10:00 p.m. on September 23, 1984, backing his vehicle into a parking space not used by many people. Glover sat in the car about fifteen minutes before entering the store. Once Glover was inside the store, the officer observed that he was watching the cash register and was looking at the customers in the store. Since Glover appeared to be lost, Horvath asked him if he could be of assistance. He stated "that he was trying to locate a friend up on Jordan Street but didn't know what location." Horvath got a map to point out the street location, but Glover, who had on a blue jogging suit, seemed more interested in the cash register than where he wanted to go. The officer noticed that Glover was sweating heavily and was nervous. Glover also pointed out to Horvath a couple in the store and stated that they followed him into the store and that they were after him. Horvath thought that this was suspicious because he had observed the couple in the store before Glover had arrived.

Glover returned to his car, sitting in the driver's seat, where he remained for ten to fifteen minutes. He then returned to the store. The officer approached Glover again to talk with him. Again Glover commenced to sweat heavily, acted nervous, and looked around the store. Glover purchased a soft drink and returned to his car, where he remained.

Horvath had noted a District of Columbia license plate on the car. He testified that: "I had a feeling that subject was a person of suspicious activity, feeling that he might be wanting to rob the store." He checked the license number and found that the vehicle was owned by Bridget Thomas. He called the police department, requested a backup, and went to the parking area to investigate further.

As he approached Glover's vehicle, Horvath noted that Glover was in the driver's seat with his right hand in a blue gym bag which was sitting on the passenger's seat beside him. Glover slowly took his hand out of the bag as Horvath approached and Horvath stated that he did not see anything in Glover's hand as he removed it from the gym bag. Glover acknowledged that the vehicle was registered to Bridget Thomas. He called her on the telephone, and Horvath spoke with her and confirmed that Glover had permission to drive the vehicle. A second police officer arrived and was instructed by Horvath to watch Glover while he (Horvath) went to search the car.

Inside the blue gym bag, Horvath found a loaded .44 magnum pistol and extra ammunition. Glover was then frisked, arrested, and his hands were cuffed behind his back. He was transported in this fashion to police headquarters by Officer Horvath in the back seat of Horvath's police cruiser. Horvath testified that he observed Glover moving around in the back seat, and when they arrived at police headquarters, a search of the back seat revealed a two-inch straw containing a substance later analyzed to be cocaine. Horvath testified that he had checked the rear seat earlier that day and the car had been locked since that time until Glover was put in the rear seat. According to Horvath, no one else had been in the rear seat of the cruiser.

In support of his argument that the search of his vehicle violated his fourth amendment rights, Glover asserts: (1) that the search was not supported by probable cause; (2) that upon confirming his authority to use the car, there were no further grounds to detain him; (3) that there were no grounds for a protective search of the vehicle; and (4) that the search of the vehicle exceeded the scope of a protective search. We can readily dispose of the first argument because the Commonwealth does not claim that the warrantless search of the automobile was supported by probable cause.

The Commonwealth justifies the action of Horvath under the stop and frisk exception to the fourth amendment. This exception was recognized in *Terry v. Ohio*, 392 U.S. 1 (1968):

We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot

and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they were taken.

*Id.* at 30-31.

The principle expounded in *Terry* has been followed in Virginia courts on numerous occasions. *See Lansdown v. Commonwealth*, 226 Va. 204, 209-11, 308 S.E.2d 106, 110 (1983); *Simmons v. Commonwealth*, 217 Va. 552, 554-55, 231 S.E.2d 218, 220 (1977); *Howard v. Commonwealth*, 210 Va. 674, 677, 173 S.E.2d 829, 832 (1970); *see also* Code § 19.2-83.

■ Although *Terry* involved the stop and ensuing patdown search of a person, the stop and frisk exception was extended to automobiles in a series of cases, culminating with *Michigan v. Long*, 463 U.S. 1032 (1983). In *Long*, the Court acknowledged that investigative detentions involving suspects in automobiles are "fraught with danger to police officers," *id.* at 1047, and concluded that:

[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *See Terry*, 392 U.S., at 21. "[T]he issue is whether a reasonable prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27.

*Long*, 463 U.S. at 1049-50.

We find that the circumstances of the instant case support the conclusion that Officer Horvath possessed a reasonable belief based on specific and articulable facts that Glover may have been armed and presently dangerous if he were permitted to re-enter the car. Horvath was an experienced police officer and it was after dark at the time of the incident. Glover had backed his vehicle in an awkward, albeit legitimate, parking space. He remained in the car several minutes before entering the store, at which time he stated alternately that he needed directions, and that other persons in the store were "out to get him." He appeared nervous and preoccupied with the operation of the cash register. Upon returning to his car, he did not leave the parking area, but instead sat in his car before entering the store a second time. When he returned to his car the second time, he still did not leave the parking area, and upon the officer's approach, was observed removing his hand from the gym bag in a deliberate manner. Employees of the 7-11 store had previously been robbed. Under the totality of the circumstances, we find these facts justified Officer Horvath's reasonable belief that Glover was armed and presently dangerous. The subsequent search was restricted to an area in the car to which Glover would have access. Thus, as in *Long*, "[i]t is clear that the intrusion was 'strictly circumscribed by the exigencies which justif[ied] its initiation.' " 463 U.S. at 1051.

Glover argues that it was not reasonable for Officer Horvath to fear for his safety or for the safety of others, because Glover was not in the car at the time and was effectively under police control at the time the search was conducted. As evidence that the police did not fear him at the time they searched the car, Glover notes that his person was not searched until *after* the gun was found, indicating that the police did not consider him dangerous until after the search had produced the weapon.

The defendant in *Long* was not frisked until after the police found the weapon in his car. He made essentially the same argument as that now made by Glover, to which the Supreme Court made the following response:

[Appellant's] reasoning is mistaken in several respects. During any investigative detention, the suspect is "in the control" of the officers in the sense that he "may be briefly detained against his will . . . ." *Terry, supra*, at 34 (WHITE, J., con-

curring). Just as a *Terry* suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a *Terry* suspect in Long's position break away from police control and retrieve a weapon from his automobile. See *United States v. Rainone*, 586 F.2d 1132, 1134 (CA7 1978), cert. denied, 440 U.S. 980 (1979). In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside. *United States v. Powless*, 546 F.2d 792, 795-796 (CA8), cert. denied, 430 U.S. 910 (1977). Or, as here, the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons. In any event, we stress that a *Terry* investigation, such as the one that occurred here, involves a police investigation "at close range," *Terry*, 392 U.S., at 24, when the officer remains particularly vulnerable in part because a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself, and others from possible danger . . . ." *Id.*, at 28. In such circumstances, we have not required that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved in a *Terry* encounter.

463 U.S. at 1051-52. We find this reasoning dispositive of Glover's argument.

Glover next argues that he was illegally detained by the police after they had resolved their original suspicions about the ownership of the car. Therefore, Glover concludes, the evidence gained from the ensuing search was acquired illegally and should have been suppressed. In support, he cites *Florida v. Royer*, 460 U.S. 491 (1983), in which the defendant was stopped at Miami International airport because he fit a "drug courier profile." While on the concourse, Royer was approached by narcotics agents who took his ticket and identification. He was then taken to an interrogation room at the airport, where the bags he had previously checked with the airline were retrieved without his consent and subsequently searched, revealing marijuana. The Supreme Court found that the detention had exceeded the purpose which justified the initial stop and ruled that the evidence was inadmissible.

We find *Royer* inapposite to this case. In *Royer*, what had commenced as a consensual inquiry in a public place escalated into an investigatory detention in a police interrogation room. The police had possession of Royer's airplane ticket, his identification, and without his consent had seized his baggage. The Supreme Court held: "*Terry v. Ohio* and the cases following it did not justify the restraint to which Royer was then subjected. As a practical matter, Royer was under arrest." *Id.* at 503. *Royer* was, therefore, not a "stop and frisk" case. The police in *Royer* were narcotics agents specifically searching for drugs, and it was never alleged that the justification was based on a fear that the suspect was armed and dangerous. Thus, the analysis in *Royer* is substantially different than that which we apply to this case. We conclude that the search was conducted in accordance with the applicable guidelines in *Terry* and *Long*, that the search did not violate Glover's fourth amendment rights, and that the trial court properly denied the motion to suppress the handgun.

## II.

Glover next maintains that the Commonwealth's evidence was wholly circumstantial and was insufficient to show that he knowingly and intentionally possessed the handgun as required by Code § 18.2-308.2(A). He submits that the presence of a handgun within an enclosed container, which he denied owning, on the front seat of a borrowed car, is insufficient to warrant a reasonable inference of personal knowledge of the presence of the gun.

The trial judge, however, is entitled to judge the credibility of the witnesses and to accept or reject their testimony. *Starks v. Commonwealth*, 225 Va. 48, 53, 301 S.E.2d 152, 155 (1983). Although Glover denied ownership of the gym bag or that he had his hand in the bag when Officer Horvath approached, the evidence taken in the light most favorable to the Commonwealth indicates otherwise. Bridget Thomas, the owner of the car, testified that she had never seen the gym bag or the handgun, and that those items were not in the car at the time it was loaned to Glover several hours before the incident. Officer Horvath testified that he observed Glover's hand in the gym bag, and that Glover slowly removed his hand from the bag as Horvath approached. We find that the record clearly provides sufficient evidence to support the trial court's reasonable inference that Glover had the requisite

knowledge and control of the gun to support the firearm conviction.

## III.

Next, Glover argues that the facts do not support his conviction for possession of cocaine. He states that he was searched and his hands were handcuffed behind his back prior to being put into the police vehicle. He remained handcuffed in this manner throughout the time he was in the police car, and he submits that it is extremely unlikely that he could have removed the straw of cocaine from his person and hidden it in the back seat. Officer Horvath testified that he checked the back seat earlier in the day and he did not find any drugs, but he also testified that he searched Glover immediately before putting him in the car and failed to find any drugs. Thus, Glover maintains that it is equally as likely that Officer Horvath overlooked the two-inch straw during his search of the cruiser before leaving the station as it is that Officer Horvath overlooked the straw when he searched Glover. He argues that circumstantial evidence of this nature should be declared insufficient as a matter of law.

Glover's argument, however, ignores several facts favorable to the Commonwealth. First, the search of the police cruiser at the beginning of the officer's shift was thorough to the extent that the back seat was removed to ensure that nothing was missed. By contrast, the search of Glover's person prior to his being placed in the vehicle was, by the officer's testimony, a "frisk . . . for weapons." It is reasonable to infer that the weapon frisk was not designed to uncover a two-inch straw, while the more detailed search of the back seat was to uncover evidence of this nature. Another probative fact is that Officer Horvath observed Glover moving about in the police cruiser and suspected Glover of trying to hide something in the rear seat. Horvath testified that he even told Glover at that point that he had checked the seat earlier and knew that it was "clean," so that if anything was found, he would know that it was from Glover. The search of the rear seat at the police station disclosed the two-inch straw containing cocaine, which was found on the right side of the seat, directly at the point where Glover had been sitting. Thus, there is sufficient evidence upon which the trial judge could find that Glover had disposed of the cocaine in the back seat of the police cruiser, and we cannot say as a matter

of law that the conclusion of the trial court was erroneous.

## IV.

█ Finally, Glover maintains that the trial court erred by allowing the Commonwealth to introduce the specific nature of his prior felony conviction in contravention of the long established principle that evidence of specific prior criminal acts should be excluded because of its prejudicial effect on the defendant. It is equally well settled, however, that there are numerous exceptions to this general rule of exclusion. We believe that the following is a fair statement of the rule in Virginia regarding the admission of evidence of other specific offenses:

> [E]vidence which shows or tends to show the accused guilty of the commission of other offenses at other times is inadmissible if its only relevancy is to show the character of the accused or his disposition to commit an offense similar to that charged; but if such evidence tends to prove any other relevant fact of the offense charged, and is otherwise admissible, it will not be excluded merely because it also shows him to have been guilty of another crime.

*Williams v. Commonwealth*, 203 Va. 837, 841, 127 S.E.2d 423, 426 (1962).

In the instant case, Glover was charged with violating § 18.2-308.2(A), which states: "It shall be unlawful for any person who has been convicted of a Class 1, 2, or 3 felony, rape or robbery, or a felony involving the use of a firearm under the laws of this Commonwealth, or any other state, the District of Columbia, the United States or any territory thereof, to knowingly and intentionally possess or transport any pistol, revolver or other handgun." The indictment alleged that Glover had knowingly and intentionally possessed a handgun after having been convicted of robbery.

The Commonwealth is entitled to prove the elements set forth in the indictment, and proof of the handgun charge under § 18.2-308.2(A) required proof of the previous conviction for robbery. The evidence was, therefore, offered and admitted for a legitimate purpose and not for the prohibited purpose of showing a predisposition on the part of the accused to commit crime. If the result were otherwise, the Commonwealth would be precluded from in-

troducing sufficient evidence against any defendant to obtain a conviction under § 18.2-308.2(A).

"The law will not permit one accused of crime to go unpunished simply because the Commonwealth cannot prove his guilt without bringing in some evidence which tends to show that he has committed other crimes." *Hall v. Commonwealth*, 143 Va. 554, 561, 130 S.E. 416, 418-19 (1925).

Glover contends that evidence of the specific nature of his prior offense was not necessary to obtain a conviction because he stipulated that he had a prior conviction of a type which satisfied § 18.2-308.2(A). The Commonwealth, however, is not obliged to enter into an agreement whereby it is precluded from putting on its evidence simply because the defendant is willing to make a qualified stipulation. The trial court correctly ruled that the Commonwealth was entitled to prove the indictment, and the evidence of Glover's prior conviction for robbery was properly received for that purpose. Glover's willingness to stipulate does nothing to change that conclusion.

For the reasons stated, the judgment of the trial court is affirmed.

*Affirmed.*

Duff, J., and Moon, J., concurred.