COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Frank and Beales
Argued at Chesapeake, Virginia


JOWAYNE ALSTON

MEMORANDUM OPINION* BY

v.      Record No. 0831-06-1      JUDGE RANDOLPH A. BEALES
                                  JUNE 5, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
James A. Cales, Jr., Judge

Dianne G. Ringer (Bierowicz & Ringer, P.C., on brief), for
appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Jowayne Alston (appellant) appeals from his conviction following a bench trial of carrying a

concealed weapon in violation of Code § 18.2-308.2, possession of a firearm with drugs in violation

of Code § 18.2-308.4, and possession with intent to distribute cocaine in violation of Code

§ 18.2-248. He argues the trial court erred in denying his motion to suppress the concealed weapon

found in the passenger compartment of his vehicle. For the reasons stated, we affirm the trial

court.

BACKGROUND

"'On appeal from a denial of a suppression motion, we must review the evidence in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences.'" Kyer v.

Commonwealth, 45 Va. App. 473, 477, 612 S.E.2d 213, 215 (2005) (en banc) (quoting Slayton v.

Commonwealth, 41 Va. App. 101, 103, 582 S.E.2d 448, 449 (2003)). "The defendant has the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

burden to show that the trial court's denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error." Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002).

On December 4, 2004, Officer B.W. Fitzgerald of the Portsmouth Police Department observed a gray Honda driving with a burnt-out right rear running light. After activating his lights and siren, Fitzgerald noticed that the driver of the Honda, whom he later learned was appellant, "began to move around the front of the vehicle, bending slightly to the front, to the side, to the back of the vehicle. [The driver] was making all types of movement around the vehicle." Fitzgerald said that these movements continued until Fitzgerald reached the driver's side window and asked appellant for his license and registration. Several other officers assisted Fitzgerald during the stop. Appellant was accompanied by two passengers; an adult male was seated in the front passenger seat beside appellant, and a juvenile male was seated in the back seat of the vehicle.

According to Fitzgerald, appellant seemed confused as to where his identification and registration were located and searched "erratic[ally]" throughout the vehicle. Appellant looked in the glove compartment, in the side of his door, in the pocket of a jacket he was wearing, and again in the glove compartment. Appellant then reached into the back seat and pulled a coat over the middle console. Appellant did not look in the pockets of that coat for his identification. Fitzgerald, at this point, became concerned for his safety and the safety of his fellow officers and asked appellant if he had any weapons or drugs in the vehicle. After appellant responded in the negative, Fitzgerald asked him to exit the vehicle. Appellant responded, "No. Why do I have to get out of my car?" Fitzgerald asked him again and reached into the driver's side door through a partially open window, unlocked, and opened the door. Immediately thereafter, appellant handed his license and registration to Fitzgerald.

- 2 -

Officer R. Ferrell assisted Fitzgerald and approached appellant's vehicle from the passenger side. Though Ferrell did not remember what appellant was doing prior to stopping his vehicle, he became "very concerned" for officer safety after hearing Fitzgerald tell appellant to put his hands where he could see them. Upon seeing appellant reach back "for something," Ferrell almost drew his weapon since he "didn't know what it was [appellant was reaching for] at that time." Ferrell alerted the other officers to appellant's movements and commanded appellant to put his hands where the officers could see them. According to Ferrell, Officer Fitzgerald also ordered appellant to place and keep his hands on the steering wheel. On each occasion, appellant only temporarily obeyed the officers' command and continued to move his hands around the vehicle.

Upon exiting the vehicle, appellant immediately told Fitzgerald, "You can't search my car." Fitzgerald then directed him to the rear of the car, whereupon appellant restated, "You can't search my car." After appellant moved to the rear of the car and into the control of another officer, Fitzgerald "began looking around in the lunge area of the vehicle of [sic] the driver's side." Fitzgerald described the lunge area as, "Any immediate area where access to a firearm or weapon or something of that nature is assessable [sic] from [sic] the driver where he is sitting." Fitzgerald lifted the coat that appellant had placed over the middle console and discovered a loaded .380 caliber handgun "in between the driver's side seat and the console." Fitzgerald explained, "The coat was merely lying on top of the console covering the firearm."

Fitzgerald instructed the officer at the rear of the vehicle, Officer Primus, to arrest appellant. Primus placed appellant in handcuffs and performed a search of his person incident to arrest. Primus removed a ball of cocaine from inside appellant's underwear, along with $175 in cash found in his left front pants pocket and several cell phones that were clipped to appellant's waistband.

- 3 -

The trial court issued a letter opinion denying appellant's motion to suppress. Appellant was subsequently convicted of carrying a concealed weapon, possession of a firearm with drugs, and possession with intent to distribute cocaine. Thereafter, appellant appealed to this Court.

ANALYSIS

Appellant does not challenge the initial stop of the vehicle. Appellant only contests the search of the passenger compartment of the vehicle, or "lunge area," where the concealed handgun was found. If that search is deemed proper and the trial court's denial of the motion to suppress is affirmed, appellant does not challenge the search of his person incident to arrest.

Initially we note,

> "Ultimate questions of reasonable suspicion and probable cause to make a warrantless search" involve questions of both law and fact and are reviewed *de novo* on appeal. In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.

McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 691 (1996)).

When a police officer is presented with reasonable articulable facts to suggest an individual stopped for a motor vehicle violation may possess weapons that may be used against him, the officer may conduct a limited search of that individual for weapons. Terry v. Ohio, 392 U.S. 1, 24 (1968). In Michigan v. Long, 463 U.S. 1032, 1049 (1983), the Supreme Court extended this principle to a limited search of the passenger compartment of automobiles by holding:

> [T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the

officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

This Court has adopted and followed these principles when presented with facts similar to the case at bar. See James v. Commonwealth, 22 Va. App. 740, 745-46, 473 S.E.2d 90, 92 (1996) (pat down of appellant upheld after he acted "somewhat jittery" and "was unresponsive to [the officer's] request to keep his hands in [the officer's] view," which caused the officer "to be concerned that appellant might be reaching for 'a weapon or something like that in the car'"); Glover v. Commonwealth, 3 Va. App. 152, 156-57, 348 S.E.2d 434, 438-39 (1986) (search of passenger compartment upheld where the defendant "appeared nervous," "was observed [while seated in his car] removing his hand from the gym bag in a deliberate manner," and "[t]he subsequent search was restricted to an area in the car to which [the defendant] would have access [to a weapon]"), aff'd per curiam, 236 Va. 1, 372 S.E.2d 134 (1988).

Here, Officer Fitzgerald, after activating his lights and siren, saw appellant making "erratic" movements to all areas of the vehicle. When asked for identification, appellant appeared confused and looked back and forth in his glove compartment, in the side panel of his door, and in his jacket pocket. Despite the fact that he was already wearing a jacket, appellant reached into the back seat and pulled a coat over the console but did not look into the pockets of that coat for his identification. At this point, Fitzgerald felt it necessary to ask appellant whether he had any weapons in the vehicle. Officer Ferrell, upon seeing appellant reach into the back seat, became "very concerned" for officer safety and almost drew his weapon. Appellant was told numerous times by the officers to keep his hands in plain sight and on the steering wheel. Each time appellant refused to follow the officers' instructions and continued to move his hands around the vehicle. Fitzgerald finally ordered appellant to step outside of the vehicle, and, as Fitzgerald himself began to remove appellant from the vehicle, appellant *immediately* handed his identification and registration to Fitzgerald and exited the vehicle.

We hold that the above circumstances constitute specific and articulable facts which form a particularized and objective basis for a reasonable officer to suspect that appellant was in possession of a weapon that he was either trying to access or hide. The officers, therefore, had reasonable suspicion to search the passenger area, or "lunge area," of appellant's vehicle, including the area next to the middle console and the driver's seat, where the gun was found. The scope of the search was proper since it was "limited to those areas in which a weapon may be placed or hidden." Long, 463 U.S. at 1049. Because appellant does not challenge the initial stop of the vehicle or the subsequent search of his person incident to arrest, we address neither.

CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of appellant's motion to suppress and, accordingly, affirm appellant's convictions.

Affirmed.