COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Chief Judge Decker, Judges AtLee and Athey
Argued by teleconference


LAMONT LENDELL BAGLEY

                                                          OPINION BY
v.        Record No. 0249-20-2          CHIEF JUDGE MARLA GRAFF DECKER
                                                       FEBRUARY 23, 2021

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
John Marshall, Judge

Elliott B. Bender (David C. Reinhardt; Bender Law Group, PLLC,
on briefs), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Lamont Lendell Bagley appeals his conviction for second-offense possession of a

Schedule I or II controlled substance with intent to distribute in violation of Code § 18.2-248, as

well as the related revocation of a suspended sentence for his prior conviction for the same

crime. On appeal, he argues that the search in which the drugs were discovered was unlawful

under the Fourth Amendment to the United States Constitution. He further contends that the trial

court acted improperly by making erroneous written additions to the transcript. Finally, he

asserts that the evidence was insufficient to prove that he possessed the drugs and therefore also

failed to support the revocation of his prior suspended sentence. We hold that the trial court did

not commit reversible error. Accordingly, we affirm the challenged conviction and revocation.

I. BACKGROUND[1]

At about 3:00 a.m. on January 26, 2019, Officers Megan Lynch and Austin Earlenbaugh of the Henrico County Police Department responded to a call for police assistance. Both were "displaying [their] badge[s] of authority" at the time. The call was for a "disorderly situation" at 3527 Bolling Road. Officer Lynch was told that the caller reported that "two black males" and "one black female" were "blocking his driveway" in a white Nissan and had "brandished" "a firearm at [him]." Lynch also knew the caller reported that one or both of the men were "in their twenties." The caller additionally provided the police dispatcher with his name and other identifying information, although Lynch and Earlenbaugh did not know the identity of the caller at the time.

When the officers arrived at the address in their separate police cars, they determined that the dwelling at the given address was a small apartment building with an adjacent driveway.[2] They found two cars in the driveway, one white and one maroon. The white vehicle was facing the street, and the maroon vehicle was facing the white one. The officers did not activate their emergency lights or sirens and approached on foot from the street.

When the officers shone their flashlights "into the white car from the front, [they] saw a black male," the appellant, "in the driver[' ]s seat." Lynch was about ten feet away from the white car on the passenger side. Earlenbaugh stood "off[] of the driver's side" and was more than ten feet away. The officers also saw a man inside the maroon car. At that time, the

---

[1] Under the applicable standard of review, an appellate court reviews the evidence in the light most favorable to the Commonwealth, as the prevailing party below. See Armstead v. Commonwealth, 56 Va. App. 569, 572 (2010).

[2] The appellant concedes on brief that the building was a "small, six or four-plex building" and that the "alleged complaint came from someone" in that building.

- 2 -

appellant and the occupant of the maroon car were the only people other than the officers at the scene.

As soon as the beam from Officer Lynch's flashlight shone on the windshield of the white car, the appellant began to engage in "furtive movement," "very rapidly" "throwing" or "shooting" his hands "straight down," toward the bottom half of the car. Lynch saw the appellant engage in these movements "multiple" times. She could not see the appellant's hands, but she saw his arms move and believed that he was "sticking his hands . . . underneath the driver's seat." Earlenbaugh, who was standing to the side of the white car, also described the appellant's movements as "quickly leaning under the [driver's] seat."

After making these movements, the appellant opened the car door, got out "quickly," and moved rapidly toward the apartment building. The officers "stopped him from going inside [an] apartment" in order to "speak to him about the situation" for which they had been dispatched. They frisked the appellant for weapons and found "nothing . . . on him." They also obtained his identification and handcuffed him. The appellant's identification reflected that he was in his mid-thirties, although Officer Lynch did not review his birth date at that time.

Lynch next conducted a protective sweep of the driver's seat of the white car because she believed that the appellant had been trying to hide something and knew the caller had reported that an occupant of the white car had brandished a firearm. When Lynch opened the car door, she saw a blue latex glove between the driver's seat and the door. She left the glove in place and limited her search to the area beneath the driver's seat. Two to three inches from the front of the seat, she found a bag containing a large quantity of white powder that appeared to be cocaine, as well as a digital scale. Some of the powder was also "scattered on[] the floor."

Once Officer Lynch found the suspected cocaine and scale beneath the seat, the rest of the vehicle was searched. Inside the blue glove was a white substance also believed to be

cocaine. Plastic baggies that looked new were on the ground beside the driver's door of the car. The appellant did not own the car, but he had permission to use it. Although no evidence established how long he had been in the car at the time of the incident, a piece of mail bearing his name was found in the car's center console.

At the pre-trial suppression hearing, the appellant argued that the officers did not have reasonable suspicion to search the car. The judge rejected this claim and denied the motion to suppress. He reasoned that because the appellant was merely detained and not under arrest, the appellant could be expected to re-enter the vehicle when the detention ended and would once again have access to the firearm that the police reasonably believed might be in the car. Consequently, the judge held that the search of the vehicle was a lawful protective sweep.

At trial, in addition to offering testimony from the officers about their encounter with the appellant, the Commonwealth introduced evidence about the drugs. That evidence proved that the white powder in the car comprised more than 80 grams of crack and powder cocaine representing about 700 individual doses. Expert testimony regarding the value of an ounce of each type of cocaine supported a finding that the drugs were worth between $4,600 and $5,100.

In a motion to strike and again during closing argument, the appellant contended that the evidence failed to prove that he had dominion and control of the drugs as required to prove constructive possession. The trial court denied the motion to strike and found the evidence sufficient to prove the appellant's guilt. The court expressly relied on the appellant's furtive movements toward the floorboard beneath the driver's seat when the officers shined their flashlights on him. It further pointed out that the appellant quickly got out of the vehicle and "tried to walk away" from the officers. The court also emphasized that the officers found multiple new baggies on the ground beside the car door.

The court found the appellant guilty of second-offense possession of a Schedule I or II controlled substance with intent to distribute. He was sentenced to twenty years in prison with thirteen years suspended. The court also revoked the appellant's suspended sentence of ten years for a prior drug offense and resuspended nine years, leaving him with one year to serve.

The appellant subsequently filed a motion to reconsider or alternatively for a new suppression hearing. The court denied the motion. After the appellant filed his notice of appeal and the relevant transcripts were prepared, he objected to the trial transcript because it was incomplete. In response, the court subsequently filed an "Addition to Transcript."

## II. ANALYSIS

The appellant presents eight assignments of error covering four different subject areas. First, he contends that the search in which the drugs were discovered violated his Fourth Amendment rights. Second, he argues that the denial of his motion to reconsider the suppression ruling based on after-discovered evidence was error. Third, he suggests that the trial court's written additions to the transcript were not supported by the record. Fourth, he asserts that the evidence was insufficient to prove that he possessed the drugs and therefore also failed to support the revocation of his prior suspended sentence. We consider each of the assignments of error in turn.

### A. Reasonableness of the Search of the Vehicle[3]

In his first four assignments of error, the appellant argues that the search of the vehicle was unreasonable under the Fourth Amendment. Consequently, he contends that the trial court erred by refusing to suppress the incriminating evidence found in the car.

---

[3] The Commonwealth asserts that its district court discovery response, relied upon by the appellant in his motion for reconsideration, is part of the record on appeal. We do not consider the discovery response in reviewing this assignment of error because we conclude that the contents of the record *without* it support the trial court's action. See generally Commonwealth v. White, 293 Va. 411, 419 (2017) (recognizing best and narrowest ground principles).

Our consideration of these related claims involves well-defined principles. In reviewing the denial of a motion to suppress based on the alleged violation of an individual's Fourth Amendment rights, we consider the evidence introduced at both the suppression hearing and the trial. Beasley v. Commonwealth, 60 Va. App. 381, 385 n.1 (2012). The appellate court examines the trial court's application of the law *de novo*, including its assessment of whether reasonable suspicion or probable cause supported a search. Brooks v. Commonwealth, 282 Va. 90, 94-95 (2011); see Kyer v. Commonwealth, 45 Va. App. 473, 479 (2005) (*en banc*). However, we defer to the trial court's "findings of historical fact," taking care to review them "only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Malbrough v. Commonwealth, 275 Va. 163, 169 (2008) (quoting Reittinger v. Commonwealth, 260 Va. 232, 236 (2000)).

One who is in lawful possession of an automobile has a Fourth Amendment right to privacy in that vehicle. See Watts v. Commonwealth, 57 Va. App. 217, 227 (2010). Nevertheless, the Fourth Amendment permits police to conduct a pat down of a person and a protective sweep of his or her vehicle for weapons under certain circumstances. See Terry v. Ohio, 392 U.S. 1, 27, 30-31 (1968) (person); Michigan v. Long, 463 U.S. 1032, 1034-35 (1983) (vehicle), cited with approval in Arizona v. Gant, 556 U.S. 332, 346-47 (2009). The "sole justification" for both types of limited searches for weapons is "the protection of police officers and others nearby." Long, 463 U.S. at 1049 n.14 (quoting Terry, 392 U.S. at 29).

More particularly, if a "'police officer possesses a reasonable belief based on "specific and articulable facts [that] . . . reasonably warrant" [an] officer in believing [a] suspect is dangerous and . . . may gain immediate control of weapons,' the officer may . . . frisk . . . the suspect himself *and* search the accessible areas of the passenger compartment of the car in which a weapon might be hidden." Stanley v. Commonwealth, 16 Va. App. 873, 875 (1993) (second

and fifth alterations in original) (emphasis added) (quoting Long, 463 U.S. at 1049); see

McArthur v. Commonwealth, 72 Va. App. 352, 359 (2020) (recognizing the ongoing validity of

passenger compartment searches for weapons pursuant to Long); Moore v. Commonwealth, 69

Va. App. 30, 39 (2018) (same); see also Pierson v. Commonwealth, 16 Va. App. 202, 204 (1993)

(applying Long); Glover v. Commonwealth, 3 Va. App. 152, 155-58 (1986) (same), aff'd, 236

Va. 1 (1988) (*per curiam*).  A vehicle sweep justified by officer safety concerns is permissible if

it occurs *during an investigatory detention that falls short of an arrest*.  See Long, 463 U.S. at

1047, 1049-52, cited with approval in Gant, 556 U.S. at 346-47 (acknowledging that Long's

protections remain in effect); Gant, 556 U.S. at 352 (Scalia, J., concurring) (same); 3 Wayne R.

LaFave, Search and Seizure § 7.1(c), at 733 & n.185 (6th ed. 2020) (recognizing that if police

have reasonable suspicion that a detainee is armed and dangerous, Long rather than Gant applies

and permits a "frisk" of the vehicle in which the detainee was riding).[4]  In contrast, the scope of a

vehicle search conducted *incident to arrest* is governed by other factors.  See Gant, 556 U.S. at

346-47; see also McGhee v. Commonwealth, 280 Va. 620, 625 (2010) (listing the Gant factors).

Accordingly, the lawfulness of the warrantless search of a vehicle depends in part upon

the custodial status of the suspect associated with it.  The Supreme Court of the United States has

recognized that "a suspect [who] is 'dangerous[]' . . . is no less dangerous simply because he is

---

[4] In Hill v. Commonwealth, 68 Va. App. 610 (2018), aff'd, 297 Va. 804 (2019), this
Court addressed the defendant's "personal seizure as a *predicate* for the [vehicle] search" but did
not analyze the reasonableness of "the search of the vehicle itself."  Hill, 297 Va. at 811 n.2
(emphasis added) (citing Hill, 68 Va. App. at 616 n.1).  In deciding Hill, this Court considered
Long and Gant only to the extent that it noted that Gant acknowledges Long's "ongoing
validity."  See 68 Va. App. at 620 & n.2; id. at 637 (Humphreys, J., dissenting).  In affirming the
decision in Hill, the Supreme Court of Virginia also did not consider the reasonableness of the
search of the vehicle itself.  See 297 Va. at 811 n.2, 822.  Rather, it analyzed the search of the
defendant in light of Terry without mentioning Long or Gant.  Id. at 811-22; see also McArthur,
72 Va. App. at 359, 362-63 (applying Long without assessing the impact of Gant and holding
that the facts did not support the vehicle sweep at issue); Moore, 69 Va. App. at 39-40
(recognizing the ongoing validity of Long after Gant but applying Long merely by analogy in
conjunction with the community caretaker doctrine).

not arrested." Long, 463 U.S. at 1050, quoted with approval in Servis v. Commonwealth, 6 Va. App. 507, 519 (1988). The Court reasoned that "the officer remains particularly vulnerable in part *because* a full custodial arrest has not been effected" and "the officer must make a 'quick decision as to how to protect himself and others from possible danger.'" Long, 463 U.S. at 1052 (quoting Terry, 392 U.S. at 28). Consequently, the Supreme Court "ha[s] not required that officers adopt alternate means to ensure their safety in order to avoid the intrusion involved" in a protective sweep. See id., quoted with approval in Glover, 3 Va. App. at 158; see 4 LaFave, supra, § 9.6(e), at 940. Instead, police may conduct a protective sweep of the vehicle based on the assumption that when the stop concludes, the individual presumably "will be permitted to reenter his automobile" and "will then have access to any weapons inside." Long, 463 U.S. at 1052; see 4 LaFave, supra, § 9.6(e), at 944 (characterizing the Long test as "expansive").

As a result, we turn in this case to evaluate whether, under these principles, the evidence supports the trial court's ruling denying the motion to suppress. This question first hinges on whether the officers had reasonable suspicion to believe that the appellant was the person in the white car who brandished the firearm at one of the residents of the adjacent multiplex. If they did, the officers then also had reasonable suspicion to believe that he might be armed and dangerous as ultimately required to conduct a protective sweep of the vehicle. See Jones v. Commonwealth, 52 Va. App. 548, 560-61 (2008) ("[W]e conclude the officers, at the time of [the defendant's] seizure, had a reasonable articulable suspicion that [the defendant] possessed a concealed weapon[,] and . . . a reasonable suspicion of that offense *ipso facto* rendered him potentially armed and dangerous." (footnote omitted)); cf. Long, 463 U.S. at 1052 n.16 (noting that the validity of a pat down for weapons does not depend on whether the suspect's possession is lawful); Whitaker v. Commonwealth, 279 Va. 268, 277-78 (2010) (holding that probable cause

supported the arrest of the defendant for carrying a concealed weapon even though he might have had a permit).

To conduct a weapons pat down of a person and a sweep of his vehicle, an officer must reasonably suspect that the person is "armed and presently dangerous" or may gain access to a weapon in the vehicle's passenger compartment. Terry, 392 U.S. at 24 (person); see Long, 463 U.S. at 1049-51 (vehicle). "Circumstances relevant in this analysis include . . . the time of the stop, the specific conduct of the suspect[ed] individual, the character of the offense under suspicion, and the unique perspective of a police officer trained and experienced in the detection of crime." McCain v. Commonwealth, 275 Va. 546, 554 (2008). The inquiry is not whether each individual factor, viewed alone, "is susceptible [to an] innocent explanation" but, rather, whether the various factors, "*[t]aken together*," are sufficient to "form a particularized and objective basis" for an officer's suspicion. United States v. Arvizu, 534 U.S. 266, 277 (2002) (emphasis added); see Hill v. Commonwealth, 297 Va. 804, 814 (2019). Simply put, a "determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." Arvizu, 534 U.S. at 277.

The standard requires proof of only a reasonable belief that the suspect *might* have a weapon and gain control of it. See, e.g., Jones v. Commonwealth, 279 Va. 665, 672 (2010). "The degree of certitude required by the reasonable suspicion standard is 'considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less demanding than that for probable cause.'" Morris v. City of Va. Beach, 58 Va. App. 173, 183 (2011) (quoting Perry v. Commonwealth, 280 Va. 572, 581 (2010)).

In the instant case, a citizen caller provided his identifying information to the police dispatcher and reported a "disorderly situation" outside his residence at around 3:00 a.m. The complainant described two men and a woman who "were blocking his driveway" in a white

vehicle and, significantly, had "brandished" "a firearm *at [him]*." (Emphasis added). When the officers arrived at the address, they learned that it was a small apartment building, containing about four units, with a private driveway and small parking area. Although the officers did not make contact with the caller when they arrived at the scene, they had reason to believe, based on the facts, that the caller was a citizen witness who resided in the small apartment building and that his identity could be readily ascertained if his information was false.[5]

Additionally, upon arriving, the officers found a white vehicle in the driveway as the caller had stated. That vehicle was facing another one in the narrow driveway, fitting the complaint provided by the caller that his driveway was blocked. The appellant, a male of the reported race, was in the driver's seat of the white car. Thus, except for the fact that the officers found only one person rather than three in the white car, the circumstances they encountered corroborated the complaint. This evidence supported the reasonable inference that the appellant, the driver of the white car from which the firearm seemingly had been brandished, might have committed the brandishing offense or, at the very least, have information about it. See generally Code § 18.2-282(A) (providing that brandishing a firearm is a Class 1 misdemeanor).

The information provided by the caller and the officers' observations permitted them to detain the appellant briefly to investigate the brandishing complaint, a crime that specifically involves a weapon. See Branham v. Commonwealth, 283 Va. 273, 279-80 (2012) (permitting a "brief[] det[ention]" to investigate based upon reasonable suspicion of a crime).

---

[5] An informant who "provide[s] 'self-identifying information' . . . put[s] [his] 'anonymity at risk.' 'Risking one's identification intimates that, more likely than not, the informant is a genuinely concerned citizen as opposed to a fallacious prankster.'" Jackson v. Commonwealth, 267 Va. 666, 681 (2004) (citation omitted) (quoting State v. Williams, 623 N.W.2d 106, 114-15 (Wis. 2001)); see Reed v. Commonwealth, 36 Va. App. 260, 267-68 (2001); see also Illinois v. Gates, 462 U.S. 213, 234 (1983) (recognizing that an "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [the] tip to greater weight" in the reasonable suspicion calculus).

Further, before the officers made more than preliminary contact with the appellant, he engaged in behavior that heightened the suspicion that he was involved in the brandishing incident. When the officers, who were displaying their badges of authority, shined their flashlights on the white car's front windshield to investigate the report, the appellant immediately made repeated, quick gestures with his arms and hands toward the driver's seat floorboard area of the car. He then rapidly got out of the car and headed toward the nearby apartment building. At that point, the officers had even more evidence providing reasonable suspicion to detain the appellant to investigate whether he was the person who had brandished a firearm. Cf. Alabama v. White, 496 U.S. 325, 327, 331-32 (1990) (holding that corroborating the noncriminal aspects of a telephone tip with predictive information was adequate to support a stop to investigate its criminal portions). Based on the appellant's furtive behavior, coupled with the report to dispatch and the other circumstances the officers observed at the scene, Officer Lynch acted reasonably and appropriately to minimize the threat by conducting the pat down. See Beasley, 60 Va. App. at 397 (noting that multiple furtive gestures could "suggest[] . . . a concealed firearm"); Jones, 52 Va. App. at 562 (stating that an individual's actions "may both crystallize previously unconfirmed suspicions of criminal activity and give rise to legitimate concerns for officer safety" (quoting United States v. Davis, 202 F.3d 1060, 1063 (8th Cir. 2000))).

After the officers found no firearm as a result of their pat down of the appellant's person, this fact served only to heighten their suspicion that the appellant's furtive movements inside the car, immediately prior to his hasty exit and hurried movement toward the apartment door, indicated possible efforts to hide the firearm beneath the seat and distance himself from it. See Pierson, 16 Va. App. at 203-05 (holding under Long that the "suspicious and furtive conduct" of two people seen concealing a black bag in their vehicle and denying its presence "prompted understandable concern" for officer safety, justifying the officer's seizure and examination of the

- 11 -

bag); <u>Glover</u>, 3 Va. App. at 155-57 (upholding the search of a car's passenger compartment under <u>Long</u> where the officer, believing the suspect might be armed, observed him "with his . . . hand in a . . . gym bag" and "removing his hand from the gym bag in a deliberate manner"). Accordingly, the protective sweep of the vehicle was justified by the same factors that supported the pat down of his person and the fact that the pat down did not yield a weapon. Consequently, the trial court's denial of the motion to suppress evidence found in the car was not error.

The appellant contends that the search of the vehicle and seizure of the drugs occurred *incident to his arrest* and were unlawful under <u>Gant</u>.[6] However, the trial court held that the appellant was merely under "investigative detention" at the time Lynch conducted a protective sweep of the car and found the drugs. In fact, the appellant conceded in the trial court that he was not under arrest at that time, and we do not consider his assertion to the contrary on appeal. See <u>Rowe v. Commonwealth</u>, 277 Va. 495, 502 (2009) (holding that a party may not complain about an issue on appeal where he "approbate[s] and reprobate[s] by taking successive positions in the course of litigation that are . . . inconsistent . . . or mutually contradictory" (quoting <u>Cangiano v. LSH Bldg. Co.</u>, 271 Va. 171, 181 (2006))); <u>Logan v. Commonwealth</u>, 47 Va. App. 168, 172 n.4 (2005) (*en banc*) (explaining that an appellate court may accept a legal concession as a waiver). Thus, <u>Gant</u>'s holding regarding the lawful scope of the search of a vehicle incident to an arrest is not applicable here.[7]

---

[6] In <u>Gant</u>, the Supreme Court concluded that unless police have an independent basis for conducting a warrantless search of a vehicle, they "may search [it] incident to a recent occupant's *arrest* only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351 (emphasis added).

[7] The Commonwealth asserts that the search was lawful even if conducted incident to arrest because <u>Gant</u> permits a vehicular search upon a reasonable belief that evidence relevant to the crime of arrest might be found in the vehicle. Based on our holding, we do not address this argument. See <u>White</u>, 293 Va. at 419.

- 12 -

The appellant also argues that the information provided to police dispatch was in the form of an anonymous tip. Paraphrasing the holding in Florida v. J.L., 529 U.S. 266, 268 (2000), he emphasizes that "an anonymous tip that a person is carrying a gun . . . , without more, [is in]sufficient to justify a . . . stop and frisk of that person." That holding is inapposite here.

The tip in J.L. was *wholly* anonymous. 529 U.S. at 268. In this case, by contrast, the caller was not anonymous. Assuming without deciding that the record does not establish that Lynch knew the police dispatcher had the caller's name and address, other evidence in the record regarding what the dispatcher told Lynch about the caller nevertheless confirms that Lynch knew the report contained identifying information about the caller. Officer Lynch testified that the dispatcher sent them to a specific street address based on the caller's report that people in a white car were "blocking *his* driveway" and had brandished a firearm "at *[him]*." (Emphases added). When Officer Lynch arrived at the address, she determined that the building contained only about four apartments and had an adjacent "parking driveway" for those residents. Based on that information, a reasonable officer in Lynch's position could have inferred that the caller was one of the finite number of residents of the small apartment building and, consequently, was subject to prosecution for giving false information to the police if the report turned out to be false. See Jackson v. Commonwealth, 267 Va. 666, 681 (2004); Russell v. Commonwealth, 33 Va. App. 604, 611 (2000). Although Lynch was not permitted to give the tip as much weight as she could have if she had known the caller's precise identity, she was entitled to give it some weight in her assessment of the totality of the circumstances. See Jackson, 267 Va. at 681 (noting that a caller who "identified her location" and "referred to it as 'my house'" was "not truly anonymous" (quoting State v. Williams, 623 N.W.2d 106, 114 (Wis. 2001))). Additionally, time was of the essence due to the safety concerns inherent in the nature of the call. See Long, 463 U.S. at 1052. Therefore, Officer Lynch was entitled to combine the information from the caller that she

received through dispatch with her firsthand observations at the scene for purposes of establishing reasonable suspicion to believe that the appellant might have a firearm on his person or have just hidden one beneath the driver's seat. Under these circumstances, the officers were not required to locate and question the caller in order to have reasonable suspicion to support a frisk of the appellant and a protective sweep of the vehicle.

Accordingly, the trial court did not err by denying the motion to suppress because the evidence established reasonable suspicion for the protective sweep of the vehicle.

### B. Motion to Reconsider

The appellant suggests that the trial court erred by denying his motion to reconsider filed after sentencing. In that motion, the appellant argued that the Commonwealth failed to provide him with information that Officer Earlenbaugh claimed to have seen the appellant move toward the center console. The appellant additionally noted that the Commonwealth's discovery response and the pre-sentence report indicated that the officers had to open the car door to look inside, information that arguably conflicted with Officer Lynch's testimony. He argued to the trial court that he was prevented from using this evidence effectively.

On appeal, the appellant points to what he characterizes as conflicting evidence from the officers about where his furtive movements were directed and whether the officers had to open the car door to look inside the vehicle. He asserts that information about these conflicts was not provided to him in discovery and establishes that he was entitled to a new suppression hearing under the standard applicable to a request for a new trial. Assuming that the new-trial standard applies, we hold that the record does not establish that the trial court erred by denying the appellant's request for reconsideration or a new suppression hearing.

Whether to grant a motion for a new trial based on after-discovered evidence "is a matter submitted to the sound discretion of the circuit court." Orndorff v. Commonwealth, 279 Va. 597,

601 (2010) (quoting Orndorff v. Commonwealth, 271 Va. 486, 501 (2006)). To be entitled to a

new trial, the moving party must prove all of the following about the evidence at issue:

> (1) [it] appears to have been discovered [after] the trial; (2) [it] could not have been secured for use at the trial in the exercise of reasonable diligence . . . ; (3) [it] is not merely cumulative, corroborative or collateral; and (4) [it] is material[] and . . . should produce opposite results on the merits at another trial.

Id. at 602 (quoting Odum v. Commonwealth, 225 Va. 123, 130 (1983)). Based on the

appellant's reliance on this standard here, we apply these principles to our analysis of his

challenge.

<u>Earlenbaugh's Testimony Concerning the Appellant's Furtive Movements</u>

Regarding Officer Earlenbaugh's trial testimony about the appellant's furtive movements,

assuming this testimony satisfies prongs one and three of the test, the appellant failed to prove

either prong two or prong four.

Concerning prong two (the appellant's diligence), discovery responses provided by the

Commonwealth more than three months before the suppression hearing established that Officer

Earlenbaugh participated with Officer Lynch in the encounter with the appellant. Therefore, the

appellant was on notice that Officer Earlenbaugh might have knowledge of relevant facts.

Despite this notice, the appellant did not request a subpoena for Earlenbaugh for the suppression

hearing. In light of this, regardless of any duty the Commonwealth may have had to provide the

appellant with more information about Earlenbaugh's observations during discovery, the

appellant failed to exercise reasonable diligence to obtain any relevant testimony from him in a

timely fashion.[8]

---

[8] The appellant complains on brief that he requested both Earlenbaugh's body camera footage and the police report but was not provided with either. However, he does not cite any authority or make any argument regarding how the failure to provide this evidence would establish reversible error. Accordingly, pursuant to Rule 5A:20, we do not consider these points as independent arguments.

Concerning prong four (the materiality of Earlenbaugh's slightly differing testimony about the appellant's furtive movements), the record reflects that the appellant raised this alleged discrepancy in his argument at trial. The prosecutor pointed out, as Officer Earlenbaugh had done in his testimony, that Earlenbaugh and Lynch viewed the appellant's movements from different angles. The court expressly addressed this point in its ruling, noting Earlenbaugh's testimony about Lynch's "different angle," which supports the conclusion that it did not view any "discrepancy" as material.

Consequently, an analysis of prongs two and four establishes that the trial court did not err by denying the appellant's motion for reconsideration or rehearing on the suppression motion.

Lynch's Testimony Concerning the Car Door

Officer Lynch was asked on direct examination at the suppression hearing whether she opened the car door to conduct the protective search. She replied that she did not recall. On cross-examination, she first repeated that she did not recall but then concluded after additional questioning, "[Y]es, I opened the car door." The appellant, in his argument on the motion to suppress, asserted that the officers "ha[d] to open the car [door]" and committed a trespass that violated the Fourth Amendment by doing so.

The appellant argues that Lynch was "unable to establish the simple fact as to how she was able to lawfully get into the vehicle in question" and that her uncertainty "undermine[s] . . . [her] recollection" of all of the evening's events. These arguments appear to address new-trial prong four, the materiality prong, in both a substantive and impeachment fashion. In the substantive context, the Commonwealth's theory of the case was never simply that Lynch saw incriminating evidence in plain view, and the trial court's ruling on the suppression motion was that the officers had reasonable suspicion for a protective sweep of the vehicle before finding the drugs inside. Accordingly, the record does not establish that Lynch's testimony about opening

- 16 -

the door was material from a substantive perspective.[9] Further, the fact that the appellant

actually made argument regarding this evidence during the suppression hearing defeats any claim

that he was deprived of the opportunity to use it for impeachment purposes. As a result, his

claim of materiality also fails in the impeachment context.

This record establishes that the trial court did not err with regard to Lynch's testimony by

denying the appellant's motion for reconsideration or rehearing on the suppression motion.

In sum, because neither category of evidence addressed by the appellant meets the test he

advances for analysis, we hold that no error occurred.

### C. Trial Court's Additions to the Transcript

The appellant contends that the trial court erred by making its "Addition to Transcript" of

March 26, 2020, because the factual findings contained in it are not supported by the record.

This claim must be viewed in context.

When the transcript of the trial was prepared for purposes of appeal, the parties learned

that the court reporter's recording had terminated prematurely and had not captured the final

portion of the judge's oral ruling at trial. In response, the appellant asked the trial judge to

"correct and complete the transcript" by providing his full reasoning for holding that the

evidence was sufficient to prove that the appellant committed the charged offense. In response,

the judge filed an "Addition to Transcript."

Rule 5A:8(d) provided the means by which the appellant could have objected to the

contents of the "Addition to Transcript." It states in pertinent part that a party "may object to a

transcript or written statement on the ground that it is erroneous" by filing a notice with the clerk

"within 15 days after the date the notice of filing the written statement . . . is filed." The trial

---

[9] Additionally, the appellant in fact argued this point at the suppression hearing when he contended that Lynch's opening the door was a trespass. Consequently, Lynch's testimony does not constitute after-discovered evidence under prong one of the test.

court then has ten days to "overrule the objection" or take any necessary corrective action. Rule 5A:8(d).

Here, the appellant did not comply with Rule 5A:8's provisions for objecting once the trial court filed its addition to the transcript, which notably was requested by the appellant. Nothing in the record reflects a timely objection in the trial court. In fact, in conjunction with this assignment of error on brief, the appellant cites only to his earlier motion objecting to the *incompleteness* of the transcript as showing where he preserved his objection to the trial court's later *addition* to the transcript for purposes of appeal. Accordingly, we do not consider this claim of error. See also Rule 5A:18; Bethea v. Commonwealth, 297 Va. 730, 743-44 (2019).

### D. Sufficiency of the Evidence

The appellant suggests that the evidence was insufficient to support his conviction and related sentence revocation because the Commonwealth failed to establish that he constructively possessed the cocaine found beside and beneath the driver's seat of the car where he was seated.

When considering the sufficiency of the evidence on appeal, the appellate court views the evidence in the "light most favorable" to the Commonwealth, the party who prevailed in the trial court. See, e.g., Commonwealth v. Moseley, 293 Va. 455, 463 (2017) (quoting Bowman v. Commonwealth, 290 Va. 492, 494 (2015)). This Court must "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn [from that evidence]." Cooper v. Commonwealth, 54 Va. App. 558, 562 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498 (1980)). The reviewing court "does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Davis v. Commonwealth, 65 Va. App. 485, 500 (2015) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 (2003)). It asks instead "whether '*any* rational trier of fact could have found the essential elements of the

crime'" under the applicable standard. Id. (quoting Crowder, 41 Va. App. at 663). The appellate court defers to the trial court's findings regarding the credibility of the witnesses and the inferences to be drawn "from basic facts to ultimate facts" unless no rational trier of fact could have made such findings. See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

The "inquiry does not distinguish between direct and circumstantial evidence, as the fact finder itself 'is entitled to consider all of the evidence, without distinction, in reaching its determination.'" Moseley, 293 Va. at 463 (quoting Commonwealth v. Hudson, 265 Va. 505, 512-13 (2003)). "The only requirement" in a circumstantial case is that the Commonwealth "put on enough circumstantial evidence such that a reasonable [fact finder] could have rejected [the] defendant's [hypotheses] of innocence." Davis, 65 Va. App. at 502. As long as "a rational factfinder could reasonably reject [the appellant's] theories in his defense and find that the totality of the suspicious circumstances proved [his guilt] beyond a reasonable doubt," the appellate court must affirm the conviction. Moseley, 293 Va. at 466.

Basic legal principles regarding criminal drug possession provide that such possession may be actual or constructive. Smallwood v. Commonwealth, 278 Va. 625, 629-30 (2009). It may also be either sole or joint. Id. at 630. Constructive possession of drugs can be shown by "acts, statements, or conduct of the accused or other facts or circumstances which tend to show that [he] was aware of both the presence and character of the substance and that it was subject to his dominion and control.'" Wilson v. Commonwealth, 272 Va. 19, 27 (2006) (quoting Walton v. Commonwealth, 255 Va. 422, 426 (1998)). Moreover, "ownership or occupancy of [a vehicle in which drugs are] found" is a factor that "'may be considered in deciding whether an accused possessed the drug[s].'" Id. (quoting Walton, 255 Va. at 426). Possession of a vehicle does not create a presumption of "knowing possession" of drugs found inside it. Brown v. Commonwealth, 15 Va. App. 1, 9 (1992) (*en banc*). "[N]evertheless, the finder of fact may infer

from the value of [the] drugs . . . that it is unlikely . . . a transient would leave [them] in a place not under his dominion and control." Id.; see Ward v. Commonwealth, 47 Va. App. 733, 753 n.4 (2006), aff'd on other grounds, 273 Va. 211 (2007). The Commonwealth is not required to exclude the "possibility that someone else may have planted, discarded, abandoned or placed the drugs and [scales] in the [car]" in order to prove that the appellant constructively possessed them. Brown, 15 Va. App. at 10. Ultimately, "the issue [of what constitutes constructive possession] is largely a factual one" left to the trier of fact, not the appellate court. See Smallwood, 278 Va. at 630 (alteration in original) (quoting Ritter v. Commonwealth, 210 Va. 732, 743 (1970)).

Here, when the police arrived in response to the dispatch, they found the appellant in the driver's seat of a suspect vehicle. At the precise instant when the officers shined their flashlights at the vehicle's front windshield, thereby making their presence known, the appellant made rapid and repeated movements with his hands toward the floorboard area of the car. He then immediately got out of the vehicle and moved quickly toward the nearby apartment building, distancing himself from the car and initially resisting the officers' attempts to make contact with him. After the police detained the appellant, they found the first bag of cocaine a few inches beneath the driver's seat of the car. This location was the precise area toward which both officers had seen the appellant making furtive gestures as soon as they shined their flashlights at his windshield. The bag appeared to have leaked and spread some of its contents beneath the seat, supporting the inference that it had been stuffed into that location hurriedly in response to the arrival of the police and their use of flashlights to see inside the car. A second quantity of cocaine was found in another bag inside the blue rubber glove on the car floor between the driver's seat and the door jamb, in plain view of anyone entering the driver's side of the car where the appellant had been seated. New baggies were found on the ground by the door,

- 20 -

supporting an inference that they fell out or were discarded during the appellant's quick departure from the car.

The evidence from the Commonwealth's expert witness proved that the drugs, taken together, comprised about 700 individual doses and had a street value of $4,600 to $5,100. Although the appellant did not own the car, he was authorized to use it and was the only person in it at the time. Mail addressed to him was found in the center console, suggesting that his presence in the vehicle was not an isolated incident. The drugs and scale were in close proximity to where the appellant sat in the car before his hasty exit.

Considering the appellant's status as the driver of the car, his proximity to the drugs, his furtive movements toward the location where the drugs were found immediately upon the arrival of the police, and his attempt to vacate the car as quickly as he could when he saw them, a reasonable finder of fact could conclude beyond a reasonable doubt that the appellant constructively possessed the cocaine and was guilty of the charged offense. Based on this evidence, the trial court was entitled to reject the appellant's hypothesis of innocence that he did not know that the cocaine was in the car. See Holloway v. Commonwealth, 57 Va. App. 658, 666 (2011) (*en banc*) (stating that "[w]hether an alternative hypothesis of innocence is reasonable is a question of fact" subject to reversal only if plainly wrong (quoting Emerson v. Commonwealth, 43 Va. App. 263, 277 (2004))). The evidence was sufficient to support the finding that he constructively possessed the drugs.

The appellant also challenges the revocation of his suspended sentence. He contends only that it must be reversed because it was based largely or even "solely on his erroneous [drug] distribution conviction." Because we hold that the evidence was sufficient to support that conviction, we need not further consider the appellant's challenge to the revocation.

III. CONCLUSION

We hold that the denial of the motion to suppress was not error because the evidence, viewed under the proper standard, provided reasonable suspicion for a protective sweep of the vehicle for a weapon. The court also did not err by denying the appellant's motion to reconsider because, assuming the proper lens through which to view the assignment of error was the new-trial test, the evidence did not satisfy that test. Further, the appellant waived his right to challenge the contents of the trial judge's "Addition to Transcript" because he did not object after its filing. Finally, the evidence was sufficient to prove that the appellant had dominion and control over the drugs beneath the driver's seat and thus supported his conviction and the revocation of his suspended sentence. We remand the matter to the trial court for the sole purpose of correcting a clerical error in the sentencing order.[10]

Affirmed and remanded.

---

[10] The appellant was indicted and convicted for possession of a Schedule I or II substance with intent to distribute in violation of Code § 18.2-248 as a second offense. However, the sentencing order does not reflect that the conviction was for a second offense. Consequently, we remand solely for correction of the clerical error in the sentencing order. See Code § 8.01-428(B); Howell v. Commonwealth, 274 Va. 737, 739 n.*, 742 (2007); Tatum v. Commonwealth, 17 Va. App. 585, 592-93 (1994).